Strafford
No. 94-330

## ROSE-ANNA TURNER, EXECUTRIX OF THE ESTATE OF CARL E. JENSEN

v.

## ST. PAUL PROPERTY AND LIABILITY INSURANCE COMPANY

May 16, 1996

*Burns, Bryant, Hinchey, Cox & Rockefeller, P.A.*, of Dover (*Christine M. Rockefeller* and *Jennifer A. Rosenfeld* on the brief, and *Ms. Rockefeller* orally), for the plaintiff.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Julie Ann Quigley* and *Andrew D. Dunn* on the brief, and *Ms. Quigley* orally), for the defendant.

BROCK, C.J. The plaintiff, Rose-Anna Turner, executrix of the estate of Carl E. Jensen, appeals from an order of the Superior Court (*Mohl*, J.) granting the motion for summary judgment filed by the defendant, St. Paul Property and Liability Company (St. Paul), denying uninsured motorist coverage under a policy owned by the decedent, Carl E. Jensen. We affirm.

On May 14, 1993, the decedent was riding a lawnmower on private property when he was struck and killed by a motorcycle driven by Ralph Lingard. The plaintiff recovered the liability limits of $25,000 under Lingard's policy and instituted a declaratory judgment action against St. Paul, seeking underinsured motorist benefits under the

decedent's Antique Automobile Insurance Policy issued by St. Paul on the decedent's 1931 Ford Model A Roadster. The trial court, on cross motions for summary judgment, ruled that the St. Paul policy does not provide uninsured motorist coverage in the circumstances of the decedent's fatal accident.

The St. Paul policy outlines the extent of uninsured motorist coverage in a section entitled "Part C — Uninsured Motorists Coverage." Pursuant to Part C, St. Paul agreed to

> pay damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":
>
> 1. Sustained by an "insured"; and
>
> 2. Caused by an accident.

Part C defines an "insured" as:

> 1. Any person "occupying" "your covered auto."
>
> 2. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. above.

"Occupying" is defined in the policy's definitions section as "in, upon, getting in, on, out or off"; "your covered auto" is defined as "[a]ny 'antique vehicle,' 'classic vehicle' or 'special interest vehicle' shown in the Declarations." The Declarations describes the decedent's 1931 Ford Model A Roadster.

The uninsured motorist coverage of the policy thus requires the decedent to have been occupying the Model A Roadster at the time of his accident in order to recover benefits. Similarly, the liability section of the policy ties coverage to the Model A: under the definition of "insured" in "Part A — Liability Coverage" of the policy, coverage is provided "for the ownership, maintenance or use of 'your covered auto.'"

The plaintiff in her brief argues that the decedent is entitled to uninsured motorist coverage as a "named insured" under the policy and pursuant to the uninsured motorist statute, RSA 264:15, I (1993). At oral argument, the plaintiff conceded that the policy definition of "insured" is clear and supports the defendant's position of no coverage. We therefore need only look to whether the statute requires coverage beyond what is described in the policy.

RSA 264:15, I, provides:

> No policy shall be issued under the provisions of RSA 264:14, with respect to a vehicle registered or principally

garaged in this state unless coverage is provided therein or supplemental thereto at least in amounts or limits prescribed for bodily injury or death for a liability policy under this chapter, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or drivers of uninsured motor vehicles, and hit-and-run vehicles because of bodily injury, sickness or disease, including death resulting therefrom. When an insured elects to purchase liability insurance in an amount greater than the minimum coverage required by RSA 259:61, his uninsured motorist coverage shall automatically be equal to the liability coverage elected. For the purposes of this paragraph umbrella or excess policies that provide excess limits to policies described in RSA 259:61, shall also provide uninsured motorist coverage equal to the limits of liability purchased, unless the named insured rejects such coverage.

This statute "requires that uninsured motorist coverage be provided with the same monetary limits as are provided under a policy for general liability coverage." *Raudonis v. Ins. Co. of North America,* 137 N.H. 57, 61, 623 A.2d 746, 749 (1993). It is intended to allow policy holders to protect themselves against injury from an uninsured motorist to the extent they protect themselves against liability. *U.S. Automobile Assoc. v. Wilkinson,* 132 N.H. 439, 449, 569 A.2d 749, 754 (1989). The statute is silent as to who must be provided uninsured motorist coverage other than "persons insured." As we have explained, "'persons insured' refers to persons specified in the insurance policy." *Beliveau v. Norfolk & Dedham Mut. Fire Ins. Co.,* 120 N.H. 73, 76, 411 A.2d 1101, 1103 (1980).

The plaintiff essentially asks us to find that the statute mandates coverage for the named insured whenever and however he is injured by an uninsured motorist. No evidence exists that the legislature intended the statute to sweep so broadly. Nothing in the statute requires uninsured motorist coverage for persons not occupying the vehicle described in the policy when injured. Where the legislature has desired to require coverage for specific classes of individuals, it has done so explicitly, *Beliveau,* 120 N.H. at 76, 411 A.2d at 1103; it has not seen fit to require that uninsured motorist coverage run to the person insured in any and all circumstances. Rather, the requirement that all automobile liability policies include uninsured motorist coverage assures that such coverage runs at a minimum to the vehicle insured. *See id.* ("uninsured motorist coverage is vehicle related"). We are unable to discern a legislative purpose to require more.

■ We have stated that "[t]he insurance company remains free to limit its liability through clear and unambiguous policy language." *Cacavas v. Maine Bonding & Casualty Co.*, 128 N.H. 204, 208, 512 A.2d 423, 425 (1986) (quotation omitted). That is precisely what St. Paul did in the antique auto policy it issued to the decedent: it plainly limited uninsured motorist protection to persons occupying the insured vehicle. And such a limitation comports with the reasonable expectations of the policyholder, *see Allstate Ins. Co. v. Crouch*, 140 N.H. 329, 333, 666 A.2d 964, 966 (1995), where "antique vehicle" is defined in the policy as one "maintained solely for use in exhibitions, club activities, parades or other functions of public interest; *it is not used primarily for the transportation of persons or goods.*" (Emphasis added.) The St. Paul policy was simply not intended by either party to insure the decedent's regular mode of transportation. We uphold the trial court's ruling denying coverage.

*Affirmed.*

BRODERICK, J., did not sit; BATCHELDER, J., retired, sat by special assignment under RSA 490:3; HORTON, J., dissented; the others who sat concurred.

HORTON, J., dissenting: I would reverse the order of the trial court granting summary judgment to the defendant and hold that the policy in issue provides uninsured motorist coverage for the injuries sustained by the plaintiff's decedent. Although coverage is clearly excluded by the express terms of the subject policy, I would hold that coverage is mandated by the provisions of RSA 264:15, I (1993). In pertinent part, this statute provides:

> No policy shall be issued under the provisions of RSA 264:14, with respect to a vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto at least in amounts or limits prescribed for bodily injury or death for a liability policy under this chapter, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or drivers of uninsured motor vehicles, and hit and run vehicles . . . .

When a motor vehicle liability policy is issued on a vehicle registered or principally garaged in New Hampshire, it must contain uninsured motorist coverage at the liability limits covering all persons insured under the liability policy. This legislative mandate supersedes any restrictive or exclusionary language in the policy where such language is in conflict with the legislative

purpose. *See Peerless Ins. Co. v. Vigue,* 115 N.H. 492, 494, 345 A.2d 399, 400 (1975).

It is uncontested that the subject policy is a motor vehicle liability policy issued on *a* vehicle registered and garaged in New Hampshire. Thus the statutory coverage inquiry is: was the plaintiff's decedent a "person insured thereunder," or is the statutory coverage in some way properly limited under the terms of the policy?

It is fair to say that "persons insured thereunder" refers to persons insured for liability under the policy, but the uninsured motorist coverage afforded is not otherwise related to the vehicle insured or to damages incurred in the presence of a liability risk insured against. It "is not coverage for vehicles but for persons, even though it is contained in an insurance policy otherwise insuring an automobile." *Nygaard v. State Farm Mutual Automobile Ins. Co.,* 221 N.W.2d 151, 157 (Minn. 1974) (superseded by Minn. Stat. § 65B.49, subd. 3a(7) (1994)) (quotation omitted). A "person insured thereunder" need not be driving the insured vehicle or otherwise be related to the insured vehicle to be afforded statutory coverage under our law. All that is needed is that the injured party be "insured" under the policy.

One may be insured for liability coverage under a motor vehicle liability policy in two ways: by status and by use. Status coverage is afforded by being the named insured identified in the declarations or by being the resident spouse or resident relative of a named insured. *See* 1 A. WIDISS, UNINSURED AND UNDERINSURED MOTORIST INSURANCE § 4.1, at 59 (2d ed. 1992); *cf. Beliveau v. Norfolk & Dedham Mut. Fire Ins. Co.,* 120 N.H. 73, 76, 411 A.2d 1101, 1103 (1980) (coverage is for persons specified in the insurance policy). Use coverage is related to the vehicle insured, and the risk insured against must arise from the use or occupancy of the insured vehicle. A status-insured should be afforded uninsured motorist coverage in all instances where the status-insured is "entitled to recover damages from owners or drivers of uninsured motor vehicles." RSA 264:15, I. A use-insured is entitled to uninsured motorist protection only when his or her injury is related to the use of the insured motor vehicle.

Can a status-insured have his 'or her status as insured for uninsured motorist coverage be limited by defining the liability risk to the use of the insured vehicle, thereby converting the status-insured's posture to a use-insured's posture? I think not. The scope of the liability coverage is always related to the use, by the status-insured, of a motor vehicle — in this case the insured vehicle. But this limitation is appropriate only in the context of the liability

coverage. The uninsured motorist coverage is also vehicle related, but not to a vehicle related to the insured; coverage is related to the foreign uninsured motor vehicle. The relationship is to the injury, not to the insured vehicle. Thus, the status-insured, as a pedestrian or a lawnmower operator on private property, should have uninsured motorist coverage to answer for damages inflicted by a motor vehicle without regard to whether the status-insured is "occupying" or "using" the insured vehicle. I would hold that the express restrictions on coverage in the uninsured motorist section of the subject policy are superseded by statutory coverage. I would hold that, for a status defined insured, uninsured motorist coverage extends to all risks stated in the statute and may not be limited to coverage for injuries related to the insured motor vehicle. "If limited uninsured motorist coverage is to be permissible for antique or collector cars or any other special or limited use vehicles, the legislature must provide it." *St. Paul Mercury Ins. Co. v. Zastrow*, 480 N.W.2d 8, 15 (Wis. 1992).

Nor would I find that the policy is properly limited in its uninsured motorist coverage. When the statute speaks of the "amounts or limits prescribed for bodily injury or death," I would interpret that as being monetary amounts and limits. *But see State Farm Auto. Ins. Co. v. Cabuzzi*, 123 N.H. 451, 454, 462 A.2d 129, 130 (1983) (holding that amounts and limits clause in RSA 264:15, I, invokes territorial limitation permitted by statute). I would hold that the policy's risk limitations are not limitations appropriate under the statute.

The majority, in divining the intention of the legislature, states that "[n]othing in the statute requires uninsured motorist coverage for persons not occupying the vehicle described in the policy when injured" and that the mandated coverage "runs at a minimum to the vehicle insured." *Supra* p. 29. I submit that this language does not express the intent of the legislature and reflects a misunderstanding of the purpose of uninsured motorist coverage. RSA 264:15, I, requires coverage for "damages from owners or drivers of uninsured motor vehicles" resulting in "bodily injury, sickness or disease, including death resulting therefrom." There is no legislative suggestion that the covered damages must arise while occupying the insured vehicle. Nor is such a limitation customarily imposed by liability insurers. *See* 1 WIDISS, *supra* § 4.2, at 60–62. It would be unfortunate to see these insurers adopt the majority's invitation to so limit uninsured motorist coverage.

I respectfully dissent.