Hillsborough-northern judicial district
No. 2001-452

ALFRED H. TROMBLEY

v.

LIBERTY MUTUAL INSURANCE COMPANY

Argued: October 17, 2002
Opinion Issued: December 23, 2002

*Moquin & Daley, P.A.*, of Manchester (*Richard C. Moquin* and *Joni N. Esperian* on the brief, and *Mr. Moquin* orally), for the petitioner.

*Law Offices of John B. Schulte*, of Manchester (*John B. Schulte* on the brief and orally), for the respondent.

NADEAU, J. The respondent, Liberty Mutual Insurance Company, appeals a Superior Court (*Barry*, J.) order granting declaratory judgment in favor of the petitioner, Alfred H. Trombley, Jr., and requiring the respondent to provide the petitioner with uninsured motorist coverage for his workplace injuries. We reverse.

The trial court found, or the parties stipulated to, the following facts. The petitioner was injured on October 27, 1998, in the course of his employment with R.S. Audley, Inc., a construction company primarily engaged in building and maintaining roads, bridges and highways. That day, the petitioner and a co-worker were working at the R.S. Audley storage facility on Route 3-A in Bow. The Bow facility consists of an office building, several shop buildings and a fenced back lot where materials are stored. A winding dirt road serves as a driveway connecting the back lot to Route 3-A for deliveries and pickups. The trial court found, and neither party disputes, that the driveway connecting the back lot to Route 3-A is private, and therefore not a public road for the purposes of this case.

The petitioner was injured while he and his co-worker were loading forty-foot I-beams from the back lot onto a flatbed truck parked in the driveway. The petitioner was standing on the bed of the truck to guide the direction of the I-beams as his co-worker loaded them onto the truck from a Caterpillar "Integrated Toolcarrier" (IT). The IT is a multi-functional piece of heavy-duty construction equipment most often used for digging, loading, lifting, logging, snow plowing or sweeping, depending upon its

attached tool implement. The attached implement being used to load I-beams was a two-prong forklift tool.

The petitioner's co-worker loaded one I-beam from the IT onto the truck and began to drive away, but the IT tool attachment knocked the I-beam from its resting place on the truck bed. The I-beam, in turn, knocked the petitioner off the truck and onto the ground. The I-beam then fell from the truck, landing on top of the petitioner, crushing his legs.

The petitioner filed a claim for uninsured motorist coverage with the respondent under an automobile liability policy the respondent had issued to R.S. Audley for the flatbed truck. The petitioner claimed that his injuries were caused by his co-worker's negligent operation of a motor vehicle, the IT, and that his co-worker was effectively an uninsured motorist under New Hampshire law. *See Gorman v. Nat'l Grange Mut. Ins. Co.*, 144 N.H. 157, 159 (1999), *overruled by Matarese v. N.H. Mun. Assoc. Prop.-Liab. Ins. Trust*, 147 N.H. 396, 405 (2002). Therefore, the petitioner claimed he was entitled to uninsured motorist coverage under his employer's automobile liability policy. *Cf. Hull v. Town of Plymouth*, 143 N.H. 381, 384-85 (1999). The respondent denied the petitioner's request for coverage, finding that it was excluded by a policy provision precluding coverage for uninsured motorists driving vehicles "designed for use mainly off public roads while not on public roads."

The petitioner subsequently filed this declaratory judgment action in the superior court. After an evidentiary hearing, the trial court found the respondent failed to sustain its burden of proving a lack of coverage because the IT was designed for uses both on and off public roads and the exclusionary language in the insurance policy was repugnant to the New Hampshire Financial Responsibility Act. *See* RSA 264:14, :15 (1993). The trial court, therefore, granted the petition for declaratory judgment and found coverage in favor of the petitioner. This appeal followed.

The respondent's appeal challenges each of the above findings and rulings. The respondent also challenges the trial court's ruling that the petitioner was "legally entitled to recover" uninsured motorist benefits based upon the *Gorman* case, in light of our recent decision overruling it. *See Matarese*, 147 N.H. at 405. We conclude that coverage for the petitioner's injury was excluded under the express terms of the respondent's insurance policy, which is not repugnant to our Financial Responsibility Act. Therefore, we do not address the other issues raised by this appeal.

■ ■ The interpretation of insurance policy language is a question of law for this court to decide. *See Ross v. Home Ins. Co.*, 146 N.H. 468, 471 (2001). We construe insurance policy language as would a reasonable

person in the position of the insured based upon more than a casual reading of the policy as a whole. *See id.* Absent a statutory provision or public policy to the contrary, an insurance company is free to limit its liability through an exclusion written in clear and unambiguous policy language. *See Wegner v. Prudential Prop. & Cas. Ins. Co.*, 148 N.H. 107, 109 (2002). For exclusionary language to be considered clear and unambiguous, two parties cannot reasonably disagree about its meaning. *See M. Mooney Corp. v. U.S. Fidelity & Guaranty Co.*, 136 N.H. 463, 470 (1992).

The disputed exclusionary language in this case excludes uninsured motorist coverage for vehicles that are "[d]esigned for use mainly off public roads while not on public roads." The trial court found that the IT was not being used on a public road in this case, but it was designed to be used both on and off public roads. The trial court therefore ruled that the respondent did not meet its burden of proving that coverage was excluded under its policy language.

We will disturb the trial court's factual findings only if they are contrary to the weight of the evidence or erroneous as a matter of law. *See Raudonis v. Ins. Co. of North America*, 137 N.H. 57, 59 (1993). The record reflects that the IT is equipped to be used on public roads, it is registered for use on public roads, and it has been used on public roads for at least three limited purposes: (1) to plow or sweep streets if a snow plow or street sweeping tool implement is attached; (2) to move to a construction site within a limited radius; or (3) to be used at a construction site for building or reconstructing a public road. The manifest weight of the evidence, however, shows the IT was "designed for use mainly off public roads."

The IT is a large, yellow construction vehicle, manufactured by Caterpillar to run on a heavy-duty, off-road diesel engine. The IT operation manual classifies the IT as a machine conforming to environmental standards for *non-road* engines. The IT weighs 35,500 pounds without tool attachments, and operates at a maximum speed of 22.3 miles per hour. The IT can carry rated loads of up to 9,000 to 10,000 pounds when its tool implements are attached. However, its maximum speed decreases with additional weight and the operator is advised to travel in reverse when carrying bulky loads or when traveling down hills to maximize the IT's traction and visibility.

The IT operator's manual lists as typical examples for its use bulldozing, dumping, excavating, bucket loading, bucket scraping, logging, pallet loading and material handling. The operator's manual provides instructions for shipping, towing or "roading" the machine. Towing the IT is not recommended. "Roading" the IT is recommended only after

consulting a tire dealer for maximum loads and speeds for tires, and the IT should never be on any roadway for more than twenty-five miles without an extended break. "Roading" the IT also should only occur if the machine is properly licensed and registered for the roads on which it will travel.

The IT is registered as construction equipment in the State of New Hampshire and bears construction equipment license plates allowing it to travel on public roadways. *See* RSA 261:64 (Supp. 2002). The IT also was properly equipped for travel on New Hampshire roadways, having head and tail lights, hazard lights, directional signals, windshield wipers, a defroster and a horn. *See* RSA 266:1 *et. seq.* All witnesses at the trial court agreed, however, that an IT would only be on a public roadway if involved in a construction project or being transported to or from a construction site. All of the witnesses also agreed that the IT was designed for use primarily for construction purposes.

■ Based upon this undisputed evidence and the statutory definition of highway building equipment in effect at that time, which was,

> all bulldozers, rollers, scrapers, graders . . . excavators . . . bucket loaders, snow loaders . . . and such other items of equipment which in the opinion of the director [of motor vehicles] *have no usefulness upon the highways* except for the building, repair or maintenance of highways . . . or while being transported or moved over the highways . . . .

RSA 259:42 (1993) (emphasis added), we find that the IT was "designed for use mainly off public roads." Because the IT was not on a public road when the petitioner was injured, we conclude that it is excluded from uninsured motorist coverage under the policy language in this case.

We also do not find this exclusionary language to contravene the requirements of the Financial Responsibility Act. *See* RSA ch. 264. The respondent must provide uninsured motorist coverage only to the extent that either the financial responsibility statute or public policy require. *See Wegner*, 148 N.H. at 109.

The statute requires that a policy providing general liability coverage to an insured also provide uninsured motorist coverage to that insured with the same monetary limits, although not necessarily with the same scope. *See, e.g., Turner v. St. Paul Prop. & Liab. Ins. Co.*, 141 N.H. 27, 29 (1996). "It is intended to allow policy holders to protect themselves against injury from an uninsured motorist to the extent they protect themselves against liability." *Id.* Its purpose "is to protect policy holders against losses caused by irresponsible automobile drivers with insufficient insurance coverage to pay for the insured's injuries." *Wyatt v. Maryland Cas. Co.*, 144 N.H. 234,

239 (1999) (quotation omitted). Any further coverage, however, is not required.

In the present case, the policy holder is the petitioner's employer, while both the victim and the tortfeasor are the policy holder's employees who were working in the course of their employment. An employer, as policy holder, protects itself from liability when its employee injures a third party in an accident involving the employer's covered vehicle. Thus, under our decision in *Hull v. Town of Plymouth*, the employer's insurance carrier would be statutorily required to provide uninsured motorist coverage under its automobile liability policy to the same extent, to an uncompensated employee injured in an accident with a third-party uninsured motorist while using the employer's vehicle in the scope of employment. *See Hull*, 143 N.H. at 384-85.

In contrast, however, when the employer is the policy holder and both the victim and the tortfeasor are its employees, the employer's liability policy does not provide liability coverage for an employee injuring another employee in the course of their employment. Nor is the policy statutorily required to do so, because the injured employee would be fully compensated for his or her injuries under the Workers' Compensation Act. *See id.* at 384; *see also* RSA 259:61 (1993).

Our Financial Responsibility Act requires that:

> No policy shall be issued under the provisions of RSA 264:14, with respect to a vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or drivers of uninsured motor vehicles ....

RSA 264:15, I (Supp. 2002). A policy issued under the provisions of RSA 264:14 must provide

> indemnity for or protection to the insured and any person responsible to him for the operation of the insured's motor vehicle, ... against loss by reason of the liability to pay damages to others for ... bodily injuries ... accidentally sustained ... by any person other than the insured, or employees of the insured actually operating the motor vehicle or such other person ... entitled to payments or benefits under the provisions of any workers' compensation act ....

RSA 259:61 (1993).

Because these statutes neither expressly prohibit the exclusionary language in this case nor require liability or uninsured motorist coverage, the insurer was free to limit its liability through this exclusionary policy language. *See, e.g., West American Ins. Co. v. Pirro*, 808 P.2d 322, 323 (Ariz. Ct. App. 1990); *Chase v. State Farm Mut. Auto. Ins.*, 641 P.2d 1305, 1309 (Ariz. Ct. App. 1982); *Shumaker v. Farm Bureau Mut. Ins. Co.*, 785 P.2d 180, 181-82 (Kan. Ct. App. 1990).

*Reversed.*

BROCK, C.J., and BRODERICK, DALIANIS and DUGGAN, JJ., concurred.