Lancaster District Court
No. 2009-011

### THE STATE OF NEW HAMPSHIRE

v.

### WAYNE VILLENEUVE

Argued: February 17, 2010
Opinion Issued: June 3, 2010

*Michael A. Delaney*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Law Office of Leonard D. Harden*, of Lancaster (*Leonard D. Harden* on the brief and orally), for the defendant.

DUGGAN, J. The defendant, Wayne Villeneuve, was tried in the Lancaster District Court (*Sargent*, J.) and found guilty of driving under the influence of intoxicating liquor. *See* RSA 265-A:2 (Supp. 2009). He appeals, arguing that the trial court erroneously: (1) admitted a letter in violation of his Confrontation Clause rights; (2) admitted the results of his breath test; and (3) concluded that the State did not commit a discovery violation. We affirm.

The record reveals the following. In the early morning of July 7, 2007, Officer Blaine Hall of the Northumberland Police saw the defendant driving toward him. The defendant stipulated that he was speeding. His vehicle crossed over the center line, so that one of its headlights was in Officer Hall's lane, and Officer Hall moved to the right to avoid a collision as the defendant passed him. Officer Hall stopped the defendant, identified himself, and told the defendant that he was being stopped for speeding and crossing the center line. The defendant responded, "[Y]eah, I've had a

couple beers." The defendant's eyes were red and watery, and Officer Hall smelled the odor of alcohol. After the defendant performed field sobriety tests, Officer Hall arrested him for driving under the influence. Subsequently, the defendant agreed to take a breath test, and the results revealed that he had a blood alcohol level of .15.

At trial, the defendant introduced evidence from two experts: Dr. Lance Platt, who testified about field sobriety tests, and Thomas Workman, who testified about the type of breath testing instrument used in New Hampshire. This instrument is a modified version of the Intoxilyzer 5000EN. Unlike the Intoxilyzer 5000EN, the New Hampshire instrument has additional components, including "the ability to attach a . . . tox trap ['a small expandable, like a balloon which permits the machine to capture the last part of the breath that's supplied by a subject'] to the back of the device." New Hampshire is the only state that retains a breath sample in this manner. *See Opinion of the Justices (Breath Test Samples),* 160 N.H. 180, 185 (2010). As a result, the New Hampshire instrument has an extra solenoid, or switch, not present on other versions. Workman testified that these added features require additional software, wiring, and circuits.

Although the Intoxilyzer 5000EN is listed in the Conforming Products List in the Code of Federal Regulations, because of the differences described above, Workman opined that the New Hampshire instrument is not listed and should be recertified, as the differences could "potentially" affect its accuracy. Nancy Mobile, an expert employed by the New Hampshire Department of Safety, testified that although the New Hampshire instrument differs from the Intoxilyzer 5000EN, the differences do not affect its accuracy. Therefore, for all relevant purposes, the New Hampshire instrument is the same as the Intoxilyzer 5000EN; it does not need separate approval by government agencies and it is approved for use in New Hampshire. The State also introduced a letter from Arthur Flores, a former employee of the United States Department of Transportation, who opined that, because the differences in the New Hampshire instrument did not affect its accuracy or precision, "the 5000 EN on the [Conforming Products List] is identical to the instrument used by New Hampshire."

## I. The Flores Letter

The defendant first argues that the trial court erroneously admitted the Flores letter because the State failed to provide it to him in discovery, and its admission violated his Confrontation Clause rights.

The general rule in this jurisdiction is that a contemporaneous and specific objection is required to preserve an issue for appellate review. *State v. Ericson,* 159 N.H. 379, 386 (2009). Ordinarily, trial courts should have an

opportunity to rule upon issues and correct errors before they are presented to the appellate court. *State v. Brum*, 155 N.H. 408, 417 (2007). The objection must state explicitly the specific ground of objection. *Ericson*, 159 N.H. at 386.

 The State argues that the defendant expressly waived any objection to the admission of the letter. We agree. Following Mobile's testimony, the trial court marked the Flores letter as an exhibit and defense counsel stated, "I don't have any objection to the letter." Accordingly, the defendant did not preserve his arguments about the Flores letter for our review. *See id.*

*II. The Intoxilyzer*

Next, the defendant argues that the trial court erroneously admitted the results of his breath test because the breath testing device used in New Hampshire, a version of the Intoxilyzer 5000EN, is not on the list of conforming products for breath alcohol measurement devices as required by New Hampshire Administrative Rules, Saf-C 6302.01 and RSA 265-A:5, IV. The State argues that the evidence supported the trial court's ruling that the New Hampshire instrument was properly certified.

We review the trial court's decision on the admissibility of evidence for an unsustainable exercise of discretion. *State v. Ainsworth*, 151 N.H. 691, 694 (2005). To meet this standard, the defendant must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. *Id.*

The defendant moved to exclude his breath test results. The trial court concluded that "the chance of inaccuracy of the breath test on the machine New Hampshire uses is speculative, at best," and that "the Intoxilyzer 5000 EN is properly certified." In its order, the trial court stated:

5. The defense argues that the way the [New Hampshire] machine is designed may allow radio frequencies to penetrate the protective shield on the back of the machine. This penetration might be accomplished by splitting two solenoids . . . which, in turn, provides two times the electrical power to the solenoids.

6. Defendant maintains that the extra power to the solenoids, and the potential resulting radio frequencies, could result in a high or low breath test.

. . . .

10. . . . Mr. Flores states in his letter, "The 'capture' feature is not addressed in the NHTSA Model Specifications.

> The writers of the Specifications were interested only in the basic accuracy of equipment placed on the List. Additional features which do not affect the accuracy are left to those states that desire to use those features to demonstrate that accuracy is not [compromised]. . . .

> 11. Mr. Flores goes on to state, "The process in New Hampshire was checked and debugged so that [if] performed properly, the results of analysis of the 'captured' alcohol confirms the original analysis. I am sure that your laboratory has retained the data that demonstrates this. The process is now codified in the New Hampshire regulations." . . .

> 12. Finally, Mr. Flores notes, "Since the accuracy of the instrument is not compromised by the addition of this sample feature capability, the 5000EN on the [Conforming Products List] . . . is identical to the instrument used by New Hampshire so far as the accuracy and precision are concerned."

(Brackets omitted.)

The trial court concluded that the Flores letter "conclusively states that the sample capture feature of the Intoxilyzer 5000 EN, from the Department of Transportation's perspective, does not render an inaccurate result because the New Hampshire process was actually 'checked and debugged.'" The court determined that the defendant had failed to "make even a showing by a preponderance of the evidence" that, as the defendant's expert suggested, "there might be the possibility of an electronic and power problem which might cause an inaccurate test."

 We cannot conclude that the trial court unsustainably exercised its discretion by admitting the results of the breath test. As the fact-finder, the trial court was entitled to weigh the expert testimony and evidence and come to its own conclusion regarding the accuracy of the breath test results. *See State v. Whittaker*, 158 N.H. 762, 773 (2009) (stating that "it is up to the fact finder to determine the weight and credibility to be accorded the expert's testimony"). The trial court concluded that the defendant "did not make even a showing by a preponderance of the evidence as to" Workman's conclusion that the additional solenoid could have caused an inaccuracy in his breath test results.

Moreover, we disagree with the defendant's argument that the instrument used to test his breath did not comply with Saf-C 6302.01 and RSA 265-A:5, IV. When construing a statute, we first examine the language

found in the statute and where possible, we ascribe the plain and ordinary meanings to words used. *Appeal of Garrison Place Real Estate Inv. Trust,* 159 N.H. 539, 542 (2009). We apply the same principles of construction in interpreting administrative rules. *Vector Mktg. Corp. v. N.H. Dep't of Revenue Admin.,* 156 N.H. 781, 783 (2008) (when interpreting agency rules, where possible, we ascribe the plain and ordinary meanings to the words used). When a statute's language is plain and unambiguous, we need not look beyond it for further indications of legislative intent. *Appeal of Garrison Place,* 159 N.H. at 542. Courts can neither ignore the plain language of the legislation nor add words which the lawmakers did not see fit to include. *Appeal of Astro Spectacular,* 138 N.H. 298, 300 (1994). We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result. *Residents Defending Their Homes v. Lone Pine Hunters' Club,* 155 N.H. 486, 488 (2007); *see Vector Mktg. Corp.,* 156 N.H. at 783 (we construe administrative rules in their entirety and the administrative intent of the issuing authority is important where that intent can be ascertained). While we accord deference to an agency's interpretation of its regulations, our deference is not total, because we still must examine the agency's interpretation to determine if it is consistent with the language of the regulation and with the purpose which the regulation is intended to serve. *Vector Mktg. Corp.,* 156 N.H. at 783.

RSA 265-A:5, IV provides that "[n]o tests of blood, urine, or breath authorized by RSA 265-A:4 shall be considered as evidence in any proceeding before any administrative officer or court unless such test is performed in accordance with methods prescribed by the commissioner of the department of safety." Saf-C 6302.01(a) provides that "breath tests conducted on an approved instrument to determine the alcohol concentration of one's breath shall be offered for evidentiary purposes when performed by certified personnel in accordance with procedures" established by other rules. Saf-C 6302.01(a) requires that the commissioner of safety "approve the breath test instrument" according to certain criteria listed in Saf-C 6302.01(b), including that the instrument "be identified on the 'Conforming Products List' by the National Highway Traffic Safety Administration as an 'Evidential Breath Measurement Device.'" The Conforming Products List lists the Intoxilyzer 5000EN.

◼ Mobile testified that the New Hampshire machine's differences do not affect its accuracy. The Flores letter supports Mobile's testimony. Although Workman testified that, in his opinion, the differences could "potentially" affect the accuracy of the New Hampshire machine, the trial court was free to disregard his testimony and conclude that the New Hampshire instrument complies with RSA 265-A:5, IV and Saf-C 6302.01.

*See Whittaker*, 158 N.H. at 773; *State v. Rabusitz*, 145 P.3d 861, 862, 874 (Haw. Ct. App. 2006); *State v. Reedy*, 2006 WL 648861, at *2 (Ohio Ct. App. 2006); *State v. Busch*, 576 N.W.2d 904, 905-06 (Wis. 1998); *cf. Jordan v. State*, 132 N.H. 34, 36 (1989) (construing prior version of regulations governing breath-alcohol tests and noting that they were promulgated "to ensure accurate measurements of breath-alcohol levels").

Other courts have rejected similar arguments to those advanced by the defendant. *See Rabusitz*, 145 P.3d at 862, 874 (breath test results admissible even though version of Intoxilyzer not listed on conforming products list as required by state law); *Reedy*, 2006 WL 648861, at *7 (upholding trial court decision that BAC Datamaster Option K is an approved machine, although not included on list of approved instruments, because differences between Option K and listed machine were *de minimis*); *Busch*, 576 N.W.2d at 905-06 (rejecting defendant's argument that modified version differed from listed breathalyzer model for purposes of accuracy and reliability). We cannot conclude that the trial court unsustainably exercised its discretion by determining that the New Hampshire instrument complied with Saf-C 6302.01 and RSA 265-A:5, IV.

*III. Discovery Violation*

Finally, the defendant argues that the State committed a discovery violation by failing to produce a service manual, schematic diagram and bill of materials for the New Hampshire machine. Specifically, he alleges that, during trial, he learned "that the schematics, electronic diagrams and various manuals provided were not specific to" the machine used to test his breath, and that the State's failure to produce materials specific to the New Hampshire machine prevented him "from allowing his expert to conduct an evaluation of the machine's accuracy or precision." The State counters that the trial court correctly found that it did not commit a discovery violation because it is not required to produce documents it does not possess.

We will not reverse the trial court's decision with respect to an alleged discovery violation absent an unsustainable exercise of discretion. *State v. Dodds*, 159 N.H. 239, 248 (2009). To show that the trial court's exercise of discretion was unsustainable, the defendant must show that it was clearly unreasonable to the prejudice of his case. *State v. Gamester*, 149 N.H. 475, 478 (2003).

Prior to trial, the defendant sought "access to any certified, New Hampshire Intoxilyzer 5000EN including schematics or manuals." The Trial Court (*Bornstein*, J.) granted the defendant's request "only to the extent that such documentation exists and is in the State's possession." At trial, Mobile testified that the State produced all materials held by the

State Laboratory, including the only schematics and bill of materials provided by the manufacturer, which was for "the general Intox 5000 EN," not the instrument used in New Hampshire. Although the State asked the manufacturer for schematics and a bill of materials specific to the New Hampshire machine, the manufacturer did not provide those materials. Mobile also testified that there was no service manual specific to the New Hampshire machine. Although the defendant contends that he first learned during trial that the materials provided by the State in discovery were not specific to the New Hampshire machine, Mobile stated that she had repeatedly informed defense counsel of this fact.

The trial court concluded that it could not "dismiss or sanction . . . given what I've just heard, because I don't think that even if [the State] made a good faith effort in this case to get what [the defendant] asked for, I don't think they'd be able to get it." The trial court ruled that the State had not "willingly or recklessly failed to turn over any discovery that would have allowed the defense to delve into its 'inaccuracy' theory further."

■ We agree with the trial court. The State represented that it gave counsel for the defendant all materials that it had pertaining to the Intoxilyzer, that there was no manual specific to the version of the Intoxilyzer used in New Hampshire, and that it had asked the manufacturer to provide as much as possible. *See State v. Downs*, 157 N.H. 695, 698 (2008) ("We agree with the State that its duty to disclose exculpatory material does not extend to records not within the control of the prosecutor or police department.").

*Affirmed.*

BRODERICK, C.J., and DALIANIS, HICKS and CONBOY, JJ., concurred.