NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2013-813

THE STATE OF NEW HAMPSHIRE

v.

ROBERT BREEST

Argued:  October 15, 2014
Opinion Issued:  December 19, 2014

Joseph A. Foster, attorney general (Elizabeth C. Woodcock, assistant attorney general, on the brief and orally), for the State.

Albert E. Scherr, of Concord, by brief, and Boies, Schiller & Flexner LLP, of Armonk, New York (Ian M. Dumain on the brief and orally), for the defendant.

LYNN, J.  The defendant, Robert Breest, appeals an order of the Superior Court (Smukler, J.) denying his motion for a new trial based upon the results of DNA testing conducted with the consent of the State.  We vacate and remand.

The pertinent facts are not in dispute.  In 1973, the defendant was convicted of murdering Susan Randall.  At the time of the murder, the police

obtained fingernail clippings from Randall. Between 2000 and 2008, by various motions to the trial court, the defendant obtained multiple rounds of DNA testing on the fingernail clippings; however, none of these tests led to post-conviction relief because the defendant could not be excluded as the DNA contributor. In 2012, the defendant, with the State's consent, obtained further DNA testing on the remaining clippings. This most recent testing, which used new and more sensitive technology, produced results which, for the first time, showed that the clippings contained DNA material from two different males. The defendant could not be excluded as a contributor of one of the male DNA profiles, but was excluded as a contributor of the second.

Based on the 2012 test results, the defendant moved for a new trial, arguing that RSA chapter 651-D empowers the court to order a new trial when a defendant has obtained favorable DNA test results. See RSA 651-D:2, VI(b) (Supp. 2014). The State moved to dismiss, arguing that the remedial provisions of the statute were not available to the defendant because he did not petition the court for DNA testing, but instead obtained the testing with the State's consent. The trial court denied the State's motion, and the State moved for reconsideration.

In response to the State's motion, the trial court reconsidered its initial determination that the remedial provisions of RSA 651-D:2 applied to the defendant's case. In its subsequent order, the court noted that the statute imposes certain prerequisites before a convicted defendant may obtain a court order directing DNA testing, and that the statute requires that the defendant establish the existence of these prerequisites by clear and convincing evidence. Because the DNA at issue was tested with the State's consent, rather than pursuant to an order issued under the statute, the court was never asked to determine whether the defendant had satisfied the statutory prerequisites necessary to obtain testing in the first instance. For this reason, the court found that the DNA "results do not trigger the remedial provisions of RSA 651-D," thus foreclosing the defendant from seeking relief under the statute.

The trial court then considered two alternative avenues of relief potentially available to the defendant. First, it looked at whether it could grant the defendant's motion for a new trial pursuant to RSA 526:1 (2007), based upon newly discovered evidence – here, the DNA test results. The court determined that it could not grant the defendant a new trial under this statute because his request was untimely.[1]

Second, the court considered whether relief would be available if it construed the defendant's motion for a new trial as a petition for a writ of habeas corpus based upon a claim of actual innocence. After reviewing federal

_____

[1] RSA 526:4 (2007) provides that "[a] new trial shall not be granted unless the petition is filed within three years after the rendition of the judgment complained of, or the failure of the suit."

and state law, the court determined that the defendant had not met his burden, even when applying what it characterized as the "more lenient standard" employed by some states, which it interpreted as requiring a defendant to show by clear and convincing evidence that "a reasonable jury would not [have found him] guilty . . . based on the DNA evidence and evidence presented at trial." Thus, it concluded that the defendant was not entitled to relief.

Because it determined that there were no avenues of relief available to the defendant, the trial court granted the State's motion to reconsider, vacated its original order, and granted the State's motion to dismiss the defendant's motion for a new trial. This appeal followed.

On appeal, the defendant argues, among other things, that the trial court erred by determining that RSA 651-D:2, VI(b) does not apply to DNA testing obtained with the State's consent. We agree. Therefore, we need not consider his other arguments.

Determining whether RSA 651-D:2, VI(b) may be invoked when DNA testing is conducted by agreement between the State and the defendant requires us to engage in statutory construction. "The interpretation of a statute is a question of law, which we review de novo." State v. Costella, 166 N.H. ___, ___ (decided September 12, 2014). "In matters of statutory interpretation, we are the final arbiters of the intent of the legislature as expressed in the words of a statute considered as a whole." Id. at ___. "When examining the language of the statute, we ascribe the plain and ordinary meaning to the words used." Id. at ___. "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." Id. at ___. "However, we will not interpret statutory language in a literal manner when such a reading would lead to an absurd result." Great Traditions Home Builders v. O'Connor, 157 N.H. 387, 388 (2008). Finally, "[w]e construe the Criminal Code according to the fair import of its terms and to promote justice." Costella, 166 N.H. at ___; RSA 625:3 (2007).

The post-conviction DNA testing statute provides, in pertinent part: "A person in custody pursuant to the judgment of the court may, at any time after conviction . . . petition the court for forensic DNA testing of any biological material" if the petitioner can establish, by clear and convincing evidence, each of nine enumerated criteria. RSA 651-D:2, I, III. The statute goes on to state:

> [I]f the results of DNA testing conducted under this section are favorable to the petitioner, the court shall order a hearing and shall enter any order that serves the interests of justice, including an order vacating and setting aside the judgment, discharging the

3

petitioner if the petitioner is in custody, resentencing the
petitioner, or granting a new trial.

RSA 651-D:2, VI(b).

The defendant argues that the trial court erred in finding that the
remedial provisions of the statute were not triggered because the State
consented to the DNA testing at issue.  While the defendant acknowledges that
the statute is silent regarding consent, he argues that it is implied within the
meaning of the statute when considered as a whole.  To that end, he argues
that to isolate the phrase "petition the court" as the only possible mechanism
for relief under the statute would defeat the statute's remedial purpose and
lead to an absurd result.  The State, on the other hand, argues that the phrase
"the results of DNA testing conducted under this section" is unambiguous, and
thus the remedial provisions of the statute do not apply when testing is
obtained by consent rather than by petition to the court.

We agree with the State that RSA 651-D:2 specifically addresses only
DNA results obtained by court order, not by consent.  However, were we to
interpret the statute to deny relief to defendants who had obtained DNA results
by consent, as the State suggests, an absurd result would follow:  two
defendants, both of whom had obtained favorable post-conviction DNA test
results – one by petition to the court, the other with the State's consent – would
be treated differently under the statute.  The defendant who had petitioned the
court for testing would be entitled to relief, whereas the defendant who
proceeded with the State's consent would not, despite equally favorable DNA
test results.[2]  "[I]t is not to be presumed that the legislature would pass an act
leading to an absurd result and nullifying to an appreciable extent the purpose
of the statute."  Costella, 166 N.H. at ___; see also An Act Relative to Post-
Conviction DNA Testing: Hearing on H.B. 640-FN Before the House Finance
Comm. (Jan. 13, 2004) at 2 (statement of Rep. Bette Lasky, prime sponsor,
noting that the goal of the statute is to protect the rights of the wrongfully
convicted).

Because the literal reading of RSA 651-D:2 urged by the State would lead
to an absurd result, we conclude that DNA tests obtained by consent trigger
the remedial provisions of the statute.  We therefore remand to the trial court
for a determination of whether the DNA results in this case are favorable under

---

[2] The State argues that when the defendant sought an agreement to the latest round of DNA
testing, he did not seek a waiver of the requirements of RSA chapter 651-D.  While we
acknowledge that the defendant did not seek such a waiver, the argument misses the mark.  The
defendant's obvious purpose in seeking the additional DNA testing – a purpose that the State just
as obviously must have known – was to obtain favorable evidence that would entitle him to a new
trial.  Under the circumstances the State cannot, and does not, suggest that it did not understand
that the defendant would seek relief under RSA 651-D:2, VI(b) if the testing produced favorable
results.

4

RSA 651-D:2, VI(b), thus entitling the defendant to a hearing and, perhaps, other relief under the statute.[3]

Vacated and remanded.

DALIANIS, C.J., and HICKS and BASSETT, JJ., concurred.

---

[3] We recognize that, in the portion of its order on the State's motion for reconsideration in which it analyzed the defendant's motion for a new trial as a petition for habeas corpus relief, the trial court concluded that the latest DNA evidence "does not rise to the level of clear and convincing evidence that a jury would reach a different verdict." However, RSA 651-D:2, VI(b) does not impose a clear and convincing evidence standard upon the determination of whether DNA evidence is favorable to the defendant and, if so, whether a hearing is required. Indeed, as to the latter issue, the statute specifically states that if the DNA testing is favorable to the defendant, "the court shall order a hearing." RSA 651-D:2, VI(b) (emphasis added). Under the circumstances here, we think that the trial court's original order was correct in concluding that "[t]he identification of the second male donor of the DNA found under the victim's fingernails warrants further examination, which can take place in the context of a hearing conducted under RSA 651-D:2, VI(b)."