NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Merrimack
No. 2014-0619

STIHL, Inc.

v.

THE STATE OF NEW HAMPSHIRE

Argued: May 13, 2015
Opinion Issued: October 27, 2015

Wadleigh, Starr & Peters, P.L.L.C., of Manchester (James C. Wheat and Pierre A. Chabot on the brief, and Mr. Wheat orally), and McGuire Woods LLP, of Richmond, Virginia (James H. Walsh and Bethany Gayle Lukitsch on the brief), for the plaintiff.

Joseph A. Foster, attorney general (Francis C. Fredericks, assistant attorney general, on the brief and orally), for the State.

LYNN, J. In this declaratory judgment action, the defendant, the State of New Hampshire, appeals an order of the Superior Court (Smukler, J.) granting summary judgment to the plaintiff, STIHL Incorporated, individually and doing business as Northeast STIHL (STIHL). The State argues that the trial court erred in finding that STIHL is not subject to RSA chapter 357-C, which regulates business practices between motor vehicle manufacturers, distributors, and dealers. See RSA ch. 357-C (2009 & Supp. 2014). We affirm.

The trial court's order relies upon the following facts. STIHL is a corporation that manufactures, distributes, and sells an array of handheld power and non-power tools such as chain saws, leaf blowers, hedge trimmers, axes, pruners, and mauls. Although many of its products have engines, none has wheels, engine and transmission, or is capable of transporting a person from one location to another. Except for a limited number of national account customers, STIHL does not sell its products directly to consumers. Instead, it authorizes certain retailers to sell STIHL brand tools. In New Hampshire, STIHL has approximately seventy-eight authorized retailers, along with six national account customers.

In 1981, the legislature enacted RSA chapter 357-C, the so-called "dealer bill of rights," to regulate, among others, automotive manufacturers and dealers. See Laws 1981, ch. 477. That statute provided certain protections for motor vehicle dealers from the actions of manufacturers, see generally Laws 1981, 477:2, and, over time, the legislature increased the level of regulation it imposed, see, e.g., Laws 1996, 263:8 (creating the New Hampshire Motor Vehicle Industry Board to enforce the statute); Laws 2002, 215:4, :6 (expanding the definition of motor vehicle). As the legislature expanded RSA chapter 357-C, it also enacted RSA chapter 347-A, a similar but less comprehensive regulatory scheme providing protections to equipment dealers. See Laws 1995, ch. 210. In 2013, through Senate Bill (SB) 126, the legislature repealed RSA chapter 347-A, and brought certain equipment manufacturers and dealers under the aegis of RSA chapter 357-C. See Laws 2013, ch. 130. In so doing, the legislature modified the definition of "motor vehicle" in RSA chapter 357-C to "include equipment if sold by a motor vehicle dealer primarily engaged in the business of retail sales of equipment," and defined "equipment" to include, among other things, "forestry equipment" and "yard and garden equipment." Laws 2013, 130:1.

After the enactment of SB 126, STIHL sought a declaratory judgment that RSA chapter 357-C, as amended, did not apply to it. The State countered that, as a "forestry" and "yard and garden" equipment manufacturer, STIHL was subject to regulation under RSA chapter 357-C. Both parties moved for summary judgment. The trial court found that RSA chapter 347-A, before it was repealed, regulated STIHL's agreements with its dealers because, under that statutory scheme, the legislature chose to broadly define the term "equipment."[1] Nevertheless, the court concluded that because STIHL produces only handheld, not ground-supported or wheeled, equipment, it falls outside of the purview of amended RSA chapter 357-C. This appeal followed.

---

[1] STIHL does not agree that it was subject to regulation under former RSA chapter 347-A, and the record contains no evidence as to whether STIHL was ever actually regulated under this statute. As this issue is not before us, we express no opinion on the matter.

The only issue on appeal is whether the provisions of RSA chapter 357-C apply to STIHL. The State contends that the plain language of the statute supports its position that RSA chapter 357-C applies to STIHL. As a threshold matter, the State argues that the terms "forestry equipment" and "yard and garden equipment" unambiguously include products made by STIHL. Moreover, the State argues that, under the statute's plain language, whether a manufacturer is subject to RSA chapter 357-C ultimately depends upon the character of the manufacturer-dealer relationship. The State contends that STIHL's relationship with its dealers is materially similar to the relationships between tractor and automobile manufacturers and their dealers, entities which are covered by RSA chapter 357-C. Finally, the State argues that because definitional language from RSA chapter 347-A was incorporated into RSA chapter 357-C, the legislature intended that RSA chapter 347-A substantively "live on" in amended RSA chapter 357-C.

STIHL counters that reading the term "equipment" within the definition of the term "motor vehicle," and within the broader context of the motor vehicle statute as a whole, shows that handheld tools are not included within the plain meaning of equipment. STIHL also argues that the "now-obsolete" RSA chapter 347-A is irrelevant to properly construing RSA chapter 357-C, which is "far more onerous, complex and comprehensive than anything contemplated by RSA 347-A." Finally, STIHL contends that the applicability of RSA chapter 357-C cannot turn upon a fact-based, case-by-case inquiry into each manufacturer-dealer relationship because, as a threshold matter, there "first has to be a 'motor vehicle' and a 'motor vehicle dealer.'"

To resolve this issue, we must engage in statutory interpretation. "The interpretation of a statute is a question of law, which we review de novo." Favazza v. Braley, 160 N.H. 349, 351 (2010) (quotation omitted). "In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole." Id. "When construing its meaning, we first examine the language found in the statute, and where possible, we ascribe the plain and ordinary meanings to the words used." Id. "When statutory language is ambiguous, however, we will consider legislative history and examine the statute's overall objective and presume that the legislature would not pass an act that would lead to an absurd or illogical result." Id. (citation omitted). "We interpret statutory provisions in the context of the overall statutory scheme." Id.

A manufacturer is subject to RSA chapter 357-C if it "engages directly or indirectly in purposeful contacts within this state in connection with the offering or advertising for sale of, or has business dealings with respect to, a motor vehicle within the state." RSA 357-C:2 (2009) (emphasis added). As amended by SB 126, the statute's definitional section provides, in pertinent part, that:

3

I.  "Motor vehicle" means every self-propelled vehicle manufactured and designed primarily for use and operation on the public highways and required to be registered and titled under the laws of New Hampshire.  Motor vehicle shall include equipment if sold by a motor vehicle dealer primarily engaged in the business of retail sales of equipment. . . .  "Equipment" means farm and utility tractors, forestry equipment, industrial equipment, construction equipment, farm implements, farm machinery, yard and garden equipment, attachments, accessories, and repair parts.

. . . .

VIII.  (a) "Motor vehicle dealer" means any person engaged in the business of selling, offering to sell, soliciting or advertising the sale of new or used motor vehicles or possessing motor vehicles for the purpose of resale . . . .

RSA 357-C:1 (Supp. 2014).  Based upon the statutory language, "motor vehicle" can include "equipment" in certain circumstances.  While "equipment" is defined broadly, the type of equipment that subjects manufacturers to regulation under the statute is limited to that which is "sold by a motor vehicle dealer primarily engaged in the business of retail sales of equipment."  RSA 357-C:1, I (emphasis added).  Whether items qualify as "motor vehicles," therefore, depends not only upon the definition of "equipment," but also upon the definition of "motor vehicle dealer."  See id.  "Equipment" is a "motor vehicle" only if it is "sold by a motor vehicle dealer primarily engaged in the business of retail sales of equipment."  Id. (emphasis added).  The definition of a "motor vehicle dealer," in turn, incorporates RSA 357-C:1, I, in that a dealer, in part, is someone who sells "motor vehicles."  RSA 357-C:1, VIII(a).  Consequently, when the two definitions are read together, a "motor vehicle dealer" becomes, in relevant part, "any person engaged in the business of selling, offering to sell, soliciting or advertising the sale of new or used [equipment if sold by a motor vehicle dealer]."  Id.

This largely circular definition provides little clarity as to which manufacturers or sellers of equipment fall within the purview of the statute.  What does seem clear, however, is that if the legislature had intended that the statute apply to any items of "equipment" that meet the criteria specified in the fourth sentence of RSA 357-C:1, I, and which are "sold by a . . . dealer primarily engaged in the business of retail sales" thereof, there would have been no reason for the second sentence of that section to include the term "motor vehicle dealer."  That it did include such term indicates that the legislature intended the statute to have a more restrictive scope with respect to the "equipment" that falls within its reach.  See State Employees Assoc. of N.H. v. N.H. Div. of Personnel, 158 N.H. 338, 345 (2009) (noting the "elementary principle of statutory construction that all of the words of a statute must be

4

given effect and that the legislature is presumed not to have used superfluous or redundant words" (quotation omitted)). Given the definitional circularity, even assuming without deciding that STIHL sells "equipment," we cannot determine from the statute's plain language whether RSA chapter 357-C applies to STIHL. Nor can we agree with the State that the plain meaning of the definitions — specifically, the way in which "equipment" is incorporated within the definition of "motor vehicle" — shows that the law's applicability turns upon the nature of the specific manufacturer-dealer relationship involved.

Because we conclude that the definitions of "motor vehicle" and "motor vehicle dealer" are ambiguous, we turn to the legislative history for guidance. See Favazza, 160 N.H. at 351. Early in the drafting process, the legislature used broad language to define when "equipment" is a "motor vehicle," but ultimately it settled upon more restrictive language. Compare N.H.S. Jour. ___ (March 21, 2013) ("'Motor vehicle' . . . shall include equipment"), with Laws 2013, 130:1 ("Motor vehicle shall include equipment if sold by a motor vehicle dealer primarily engaged in the business of retail sales of equipment."). Had the legislature intended the statute to apply to all equipment, it would not have exchanged the initial broad definition of that term for one with such restrictive, qualifying language.

The legislative hearings also show that the term "equipment" is meant to be understood within the context of the motor vehicle code. See generally RSA title XXI (2014 & Supp. 2014). During a senate hearing on SB 126, Senator Sanborn, the prime sponsor, introduced and discussed the bill. In describing the law's applicability, he stated that, "if it's got wheels, tires, and an engine," whether it be a car or a tractor, the same type of provisions can exist. Relative to Business Practices Between Motor Vehicle Manufacturers, Distributors and Dealers, SB 126, 2013 Sess. (N.H. 2013), http://www.gencourt.state.nh.us/bill_Status/BillStatus_Media.aspx?lsr=766&sy=2013&sortoption=billnumber&txtsessionyear=2013&txtbillnumber=sb126. The subsequent testimony focused upon automobiles (and automobile accessories) and analogous equipment (and equipment accessories), with auto dealership owners and representatives from the New Hampshire Automobile Dealers Association (NHADA), Chrysler, Mazda, General Motors, the Alliance of Automobile Manufacturers, John Deere, and Caterpillar, among others, testifying for and against the bill. Id. A member of the NHADA testified that RSA chapter 357-C "is a motor vehicle statute" that covers cars, trucks, heavy duty trucks, motorcycles, all-terrain vehicles (ATVs), off-highway recreational vehicles (OHRVs), side by sides, and snowmobiles, see id., all of which have engines, wheels, and transmissions and are capable of transporting persons.

The type of equipment mentioned during the house and senate hearings on the bill included tractors, skidders, truck plows, and balers. A former owner of a local business stated, "our equipment may look a little different, but

they all have engines, wheels, [and] transmissions" and, in reference to size, said, "remember[,] the equipment we sell doesn't fit in the back of a pick-up, they are huge pieces." Id. Notably, handheld equipment, like the equipment manufactured by STIHL, was not discussed. Moreover, the equipment that was discussed, i.e., large pieces of machinery and accessories, more closely resembles equipment with "wheels, engines, [and] transmissions" than do STIHL's chain saws, blowers, axes, pruners, and mauls.

Despite this focus, the State argues that the legislative history as a whole supports its argument that the applicability of the statute depends upon the character of the relationship between the manufacturer and the dealer. Specifically, it argues that the statute applies to STIHL because its relationships with its dealers are "materially similar" to those between automobile manufacturers and dealers, to which the statute clearly applies. According to the State, "if any ambiguity exists in the statutory definition of equipment, it is the presence of a franchisor-franchisee relationship that is determinative" of the statute's applicability. Although relationships between manufacturers and dealers were generally discussed during the hearings, we find no support for the State's contention that the applicability of the statute hinges upon the type of relationship between each individual manufacturer and dealer. That fact, coupled with the focus upon automobiles, tractors and other items with "wheels, engines, [and] transmissions," the type of equipment discussed, and the complete absence of any discussion regarding handheld equipment, supports our conclusion that the legislature did not intend to extend the meaning of "motor vehicle" to the handheld products manufactured by STIHL.

Furthermore, applying the statute based upon the nature of the manufacturer-dealer relationship involved would lead to an absurd result: it would create a regulatory scheme requiring a fact-based, individualized assessment to determine whether a manufacturer's relationship with its dealers is comparable to the relationships of automotive manufacturers and dealers. Absent litigation, many equipment manufacturers would not know whether they are "similar enough" to automotive or tractor manufacturers to require compliance with the statute. Under the State's reading, a manufacturer that negotiates individual contracts may have to litigate each contract to determine which ones are similar enough to automotive dealer contracts — and are therefore subject to RSA chapter 357-C — and which ones are not. We will not read such uncertainty into the statute.

In addition, given the definition of equipment, this type of case-by-case litigation to determine the statute's applicability could extend to manufacturers of such things as garden hoses ("yard and garden equipment"), work boots ("construction equipment"), and axes ("forestry equipment") sold in hardware stores (dealers "primarily engaged in the business of retail sales of equipment"). RSA 357-C:1, I. Reading the statute as a whole, we find it implausible that if

6

the legislature had intended to extend the reach of a statute designed primarily to regulate manufacturer-dealer relations in the motor vehicle industry into areas such as garden hoses, work boots, and axes, it would not have included more specific language expressing such intent. Therefore, even if we were to agree with the State that the statute emphasizes the attributes of the manufacturer-dealer relationship, we ultimately agree with STIHL that, in order to avoid absurd results, the types of equipment that are "motor vehicles" under the statute must be limited to motor vehicle-like products or attachments, accessories, or repair parts for motor vehicle-like products. See State v. Breest, 167 N.H. 210, 212-13 (2014) ("[W]e will not interpret statutory language in a literal manner when such a reading would lead to an absurd result." (quotation omitted)).[2] The products manufactured by STIHL do not satisfy these criteria.

Finally, although the State agrees that the legislative history is silent on the specific issue of handheld tools, it contends that silence alone cannot show that the legislature intended to deregulate companies like STIHL after regulating them for eighteen years under the now-repealed RSA chapter 347-A. The State points out that the legislature, before repealing RSA chapter 347-A, incorporated the definition of equipment found in RSA 347-A:1 into RSA 357-C:1, I. Compare RSA 347-A:1, I (2009) (repealed 2013) ("Dealer means a person, corporation, or partnership primarily engaged in the business of retail sales of farm and utility tractors, forestry equipment, light industrial equipment, farm implements, farm machinery, yard and garden equipment, attachments, accessories, and repair parts" (quotation omitted)), with RSA 357-C:1, I ("Motor vehicle shall include equipment if sold by a motor vehicle dealer primarily engaged in the business of retail sales of equipment. . . . Equipment means farm and utility tractors, forestry equipment, industrial equipment, construction equipment, farm implements, farm machinery, yard and garden equipment, attachments, accessories, and repair parts" (quotation omitted)). According to the State, "[t]his relocation indicates that the legislature intended that chapter 347-A live on through its integration with chapter 357-C." We disagree.

As the State recognized at oral argument, RSA chapter 357-C constitutes a significantly more comprehensive regulatory scheme than existed under RSA

---

[2] The State argues that the legislative history lends support to its argument that it is the kind of relationship that determines who is regulated under the statute. The State is correct that the legislative history reflects discussion that relationships between equipment manufacturers and dealers are similar to the relationships between automotive manufacturers and dealers. See N.H.H.R. Jour. 765 (May 22, 2013) ("The relationship between equipment dealers and manufacturers is identical to that of car/truck dealers: nearly duplicate one-sided, non-negotiable contracts and an autocratic relationship. Equipment dealers also have business operations that are nearly identical in all respects to car/truck/motorcycle etc. dealers."). The State is incorrect, however, when it infers from such discussion that the legislature intended to hinge the statute's applicability on a case-by-case relationship analysis with respect to the marketing systems for particular types of equipment.

chapter 347-A.  Applying RSA chapter 357-C to companies like STIHL, given that statute's significantly more intensive level of regulation, would produce untoward outcomes.  For example, under the State's construction of the statute, a small company that makes only handheld equipment such as hammers, rakes, or garden hoses, and sells those products through dealers such as hardware stores, would be regulated by the New Hampshire Motor Vehicle Industry Board (Board).  See RSA 357-C:12, I (2009).  Before being able to sell its products to a new hardware store, the company would be required to notify the Board and any other dealers in such equipment located in "the relevant market area."  See RSA 357-C:9, I (Supp. 2014).  If another dealer objected, the Board could approve sales at the new location only after evaluating, among other things, "[w]hether the new [equipment] dealers of the same line make in that relevant market area are providing adequate competition and convenient consumer care for the [equipment] of the line make in the market area" and the "[g]rowth or decline in population and new [equipment] registration in the relevant market area."  RSA 357-C:9, II (Supp. 2014).  We cannot imagine that the legislature intended for the Board to make this type of evaluation concerning handheld equipment such as hammers, rakes, and garden hoses.

In contrast, STIHL argues that its interpretation of RSA chapter 357-C takes the whole statute into consideration and avoids such outcomes: when the legislature moved RSA chapter 347-A into a motor vehicle provision, it intended to regulate only those manufacturers that produce equipment, and related accessories, that are analogous to automobiles, in that they have engines, wheels, and transmissions.  We agree that this interpretation furthers the purpose of the statute while avoiding absurd results, and is supported by the legislative history.  Of course, if the legislature disagrees with our interpretation, it is free to amend the statute as it sees fit.  State v. McKeown, 159 N.H. 434, 438 (2009).

For the reasons stated above, we do not believe that the legislature intended RSA chapter 357-C to regulate the handheld tools that STIHL manufactures and sells.  Accordingly, we hold that the trial court did not err in concluding that STIHL is not subject to regulation under RSA chapter 357-C.

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, and BASSETT, JJ., concurred.

8