NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

10th Circuit Court-Salem District Division
No. 2017-0692

THE STATE OF NEW HAMPSHIRE

v.

JEFFREY R. KEENAN

Argued: October 18, 2018
Opinion Issued: December 7, 2018

Gordon J. MacDonald, attorney general (Stephen D. Fuller, senior assistant attorney general, on the memorandum of law, and Elizabeth C. Woodcock, assistant attorney general, orally), for the State.

Randall Baldwin Clark, of Hollis, on the brief and orally, for the defendant.

DONOVAN, J. The defendant, Jeffrey R. Keenan, appeals his conviction in the Circuit Court (Stephen, J.) for driving a motor vehicle while his vehicle registration privileges were suspended, in violation of RSA 261:178 (2014). Because the defendant's conviction was based upon his lawful operation of a vehicle owned and registered to his son, we reverse.

The following facts have been gleaned from the record and are not disputed. On January 25, 2017, the New Hampshire Department of Safety

(DOS) suspended the defendant's operating privileges.[1]  On January 31, DOS suspended the defendant's registration due to a lack of insurance.  Between these two dates, the defendant purchased an operator insurance policy and presented evidence of this coverage by way of an "SR-22" certificate to DOS.[2]  As a result, DOS restored the defendant's operating privileges.  The notice DOS issued to the defendant explicitly stated that "All license/operating privileges are hereby restored.  Your registration remains suspended." (Capitalization omitted.)

On August 31, the defendant pulled out of his driveway and was promptly stopped by a Salem police officer who observed that the vehicle driven by the defendant was uninspected.  During the stop, the officer ran a computer check on the defendant's license and learned that the defendant's registration was suspended.  The officer also checked the registration number of the vehicle and learned that the vehicle was registered to Jake Keenan, who was subsequently identified as the defendant's son.  Nonetheless, the officer issued a summons to the defendant charging him with operating a vehicle while his registration privileges were suspended in violation of RSA 261:178.

At trial, the parties did not dispute the relevant facts — (1) the defendant's operating privileges were restored and in good standing on the date of the motor vehicle stop; (2) at that time, the defendant's registration remained suspended; and (3) the defendant was operating a vehicle, owned and properly registered in his son's name.  Thus, the only dispute at trial was whether the defendant's act of driving a vehicle lawfully registered to another person while his registration was suspended constituted a violation of RSA 261:178.

In their arguments at trial, the parties focused on the last clause of RSA 261:178, which states: "any person who shall drive or permit to be driven a vehicle owned or controlled by him upon any way after his registration has been suspended or revoked shall be guilty of a misdemeanor."  The State argued that the statute prohibits any person with a suspended registration from driving any vehicle, regardless of whether the vehicle is registered to another person, in part, because the word "controlled" as it appears in the statute is synonymous with "driven."  The defendant countered that "controlled" does not mean "driven" but instead refers to circumstances where a person treats a vehicle as his own but does not legally own it.  Based on this meaning of "controlled," the defendant argued that the State failed to prove that he owned or controlled the vehicle he was driving when the officer stopped him.

---

[1] The basis for the suspension of the defendant's operating privileges is not disclosed by the record and, at any rate, is not relevant to this appeal.

[2] An SR-22 insurance certificate is a "uniform document filed by an insurance company pursuant to RSA 264:21 and RSA 259:9 that certifies that the policyholder is insured for New Hampshire's minimum liability requirements under RSA 264."  N.H. Admin. R., Saf-C 202.01(ah).

2

The trial court found that the defendant "drove a vehicle controlled by him, on a way, after his registration was suspended" and entered a finding of guilty. In reaching this conclusion, the trial court reviewed the defendant's registration suspension and determined that the suspension was tied to him personally rather than to a specific vehicle. Based on this determination, the trial court concluded that the "legislative intent" was to prohibit him from "driving any vehicle until he gets that straightened out." The defendant appeals his conviction arguing solely that the trial court rested its decision upon an erroneous interpretation of RSA 261:178.

Resolving the purely legal issue now before us requires that we engage in statutory interpretation. The interpretation of a statute presents a question of law, which we review de novo. STIHL, Inc. v. State of N.H., 168 N.H. 332, 334 (2015). In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. Id. When construing its meaning, we first examine the language found in the statute, and where possible, we ascribe the plain and ordinary meanings to the words used. Id. When statutory language is ambiguous, however, we will consider legislative history and examine the statute's overall objective and presume that the legislature would not pass an act that would lead to an absurd or illogical result. Id. at 334-35. We interpret statutory provisions in the context of the overall statutory scheme, id. at 335, and construe all parts of a statute together to effectuate its overall purpose and avoid absurd or unjust results. State v. Fogg, 170 N.H. 234, 236 (2017). We apply the same principles of construction when interpreting administrative rules. State v. Villeneuve, 160 N.H. 342, 347 (2010).

On appeal, the defendant argues that the trial court erroneously treated "controlled" as a synonym for the term "drive," which constitutes an illogical interpretation of the statute. The State argues, as it did to the trial court, that the statute prohibits any person with a suspended registration from driving any vehicle. Although the parties and the trial court attempted to determine the meaning of RSA 261:178 by focusing their inquiry on the last clause of the statute, we construe all parts of the statute together to effectuate its overall purpose, even if the parties do not address it. See Fogg, 170 N.H. at 236. Accordingly, we consider all of the relevant language set forth in RSA 261:178, which states:

> **Suspension of Registration of Vehicle.** The director, upon evidence satisfactory to him that the owner of a vehicle is permitting or has permitted the same to be driven in violation of any of the provisions of this title . . . may suspend the registration of such vehicle until [the director] is satisfied that the offense will not be repeated or the owner has been acquitted, and any person who shall drive or permit to be driven a vehicle owned or controlled

3

by him upon any way after his registration has been suspended or revoked shall be guilty of a misdemeanor.

The statute is not a model of clarity, but its terms are susceptible to a plain and unambiguous interpretation when we consider the overall purpose of the statutory scheme and construe all parts of the statute together. See Fogg, 170 N.H. at 236.

While the parties focus on the final clause of RSA 261:178, the statute specifically references the suspension of "the registration of such vehicle" in its immediately preceding language. RSA 261:178 (emphasis added). Accordingly, the final clause, which criminalizes the act of driving or permitting to be driven "a vehicle owned or controlled by [a person whose registration has been suspended]," RSA 261:178, logically applies only to the vehicle registrations that have been suspended, and not to the driver. To equate the term "control" with the term "drive," as the State did in its argument to the trial court, would prohibit an individual from driving a vehicle that is properly registered and insured, regardless of whether the vehicle is owned by that individual. We find the interpretation proffered by the State to be illogical.

The State's interpretation of RSA 261:178 would prohibit an individual whose registration has been suspended from driving a vehicle owned, properly registered, and insured by his employer. The State's interpretation would also prohibit this same individual from renting and operating a vehicle owned, properly registered, and insured by a car rental agency. Indeed, this interpretation equates the suspension of an individual's registration privileges with a suspension of his or her driving privileges, despite the fact that these two privileges are distinct and are governed by separate statutes. See RSA 263:53 to :64-b (2014 & Supp. 2017) (statutes governing driver's licenses suspensions and revocations). We do not find that these results are either logical or just.

More significantly, equating the term "controlled" with the terms "drive" or "own" fails to recognize that the legislature specifically sought to distinguish these terms as they apply to the prohibition the statute criminalizes. Because we interpret legislative intent from the statute as written, we will not consider what the legislature might have said, add language that the legislature did not include, or disregard or conflate language that the legislature saw fit to include. See N.C. v. N.H. Bd. of Psychologists, 169 N.H. 361, 366 (2016) ("We also presume that the legislature does not waste words or enact redundant provisions and, whenever possible, we give effect to every word of a statute."). Thus, the term "controlled" in RSA 261:178 refers to conduct separate and distinct from either the ownership or the operation of a vehicle. But, the term "control" is not defined by RSA chapter 261 or anywhere else in the motor vehicle code.

4

When a term is not defined in a statute, we look to its common usage using the dictionary for guidance. See K.L.N. Construction Co. v. Town of Pelham, 167 N.H. 180, 185 (2014). Webster's Third New International Dictionary defines "control," in relevant part, as "power or authority to guide or manage; directing or restraining domination." Webster's Third New International Dictionary 496 (unabridged ed. 2002). Applying this approved and common usage of the term "control" to RSA 261:178 establishes that an individual can control a motor vehicle, without operating or owning it, by exercising power and authority over it by managing or directing its use. For example, an individual who leases or purchases a vehicle and registers it to a third party, yet still exercises authority over it by determining or managing its use, would "control" a motor vehicle as that term is used in RSA 261:178. Given the overall purpose of this statute, the legislature intended to prohibit any person from driving or permitting to be driven "a vehicle owned or controlled by him" which has a suspended registration. This interpretation is consistent with the legislature's reference to "such vehicle" within RSA 261:178 and the statute's overall purpose without producing the unjust results we have previously noted.

The State argues, however, that the statute's general purposes should be examined in conjunction with RSA chapter 264 (2014 & Supp. 2017), the Accidents and Financial Responsibility Act, which is "intended to induce, but not to compel, motor vehicle operators to provide security to persons injured by their negligence." Progressive N. Ins. Co. v. Enterprise Rent-A-Car Co., 149 N.H. 489, 492 (2003) (quotation omitted). New Hampshire does not require that a motor vehicle be insured prior to the operation of the vehicle. Coltey v. N.E. Telephone, 135 N.H. 223, 224 (1991). Yet, in certain circumstances enumerated in RSA 264:2 and :3 (2014), proof of financial responsibility may be required when, for example, a driver has been convicted of certain traffic-related offenses or has caused an accident.

Proof of financial responsibility, and the restoration of a driver's operation and registration privileges, can be secured by the purchase of "owner" or "non-owner" insurance which is evinced by the insurance company's issuance of an SR-22 certificate establishing that the policyholder is insured for New Hampshire's minimum liability requirements. See RSA 264:21 (2014); RSA 259:9 (2014); N.H. Admin. R., Saf-C 207.06. Restoration of a driver's operating or registration privileges "shall be based on the type of filing made," such that the purchase of non-owner's coverage can restore a driver's operating privileges, but not the driver's registration privileges. N.H. Admin. R., Saf-C 207.08. The State maintains that permitting so-called "risky drivers," who have had their registration privileges suspended, to drive after purchasing non-owner insurance would effectively circumvent the registration requirement because these drivers could lawfully operate any vehicle he or she did not own or control. We disagree.

DOS regulations explicitly permit New Hampshire drivers to purchase either owner or non-owner insurance whenever proof of financial responsibility is required. See N.H. Admin. R., Saf-C 207.06. As in this case, an individual can have his or her operating privileges restored once that individual produces proof of financial responsibility to operate a vehicle. Id. The applicable regulations further provide that "where non-owner's coverage is filed, registration of a vehicle shall not be permitted and active registration shall be suspended until evidence of owner coverage on any such vehicle is filed with the director." N.H. Admin. R., Saf-C 207.08 (emphasis added).[3] As with RSA 261:178, this regulation specifies that evidence of insurance coverage on a specific vehicle is required before an individual's registration can be restored. Thus, while an individual with a suspended registration cannot register any vehicle upon securing non-owner coverage, nothing in either RSA chapter 264 or DOS regulations suggests or implies that a suspended registration bars an individual from restoring his or her operating privileges or thereafter employing them.

RSA chapter 264 and DOS regulations establish an overall objective of requiring high-risk drivers to provide security for their operation of a motor vehicle, as well as a policy of inducing motor vehicle owners to provide security for the operation of their vehicles when the owner has permitted or is permitting that vehicle "to be driven in violation of any provision of [the motor vehicle code]." RSA 261:178. These purposes are entirely consistent with our interpretation of RSA 261:178 as prohibiting the operation of a vehicle which has a suspended registration. The legislature did not intend to limit the statute's reach to the Accidents and Financial Responsibility Act, because RSA 261:178 authorizes the director to suspend the registration of a vehicle when its owner has permitted it to be driven "in violation of any provision of this title." RSA 261:178 (emphasis added).

In fact, there may be circumstances in which the director suspends the registration of fewer than all vehicles owned or controlled by a person. For example, if a motor vehicle has not been properly inspected, the director may suspend the registration of that vehicle, see RSA 266:5 (2014), but may not suspend the registration of other vehicles owned by that person as a consequence of the initial registration suspension. Under these circumstances, RSA 261:178 would not prohibit the person, assuming he or she holds a valid driver's license, from operating the properly registered vehicle owned or controlled by him or her. The legislature did not expand the statute's application to that portion of the motor vehicle code regulating operating privileges, however, because the motor vehicle code authorizes the director to

_____

[3] We note that, by virtue of New Hampshire Administrative Rule Saf-C 207.08, the defendant here could not have registered another vehicle in his name or operated another vehicle that he owned or controlled because all active registrations would have been suspended until he filed an SR-22 certificate establishing his purchase of owner insurance.

suspend an individual's operating privileges for specifically enumerated violations and conduct.  <u>See</u> RSA 263:56 (2014).  In light of these separate statutory provisions governing two distinct privileges, we find it unreasonable to interpret this statutory scheme as automatically imposing a penalty on one privilege by virtue of the imposition of a suspension as to the other.

For the foregoing reasons, we find that the trial court erred by interpreting RSA 261:178 and the suspension of the defendant's registration as barring the defendant's operating privileges.

<u>Reversed</u>.

LYNN, C.J., and HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.