Hillsborough-southern judicial district
No. 2001-023

MARSHA WEGNER, ADMINISTRATRIX FOR THE
ESTATE OF CHRISTIAN WEGNER

v.

PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY

Argued: May 8, 2002
Opinion Issued: July 24, 2002

*Griffith & Associates, PLLC*, of Wilton (*John P. Griffith* on the brief and orally), for the plaintiff.

*Mallory and Friedman, PLLC*, of Concord (*Mark L. Mallory* on the brief and orally), for the defendant.

NADEAU, J. The plaintiff, Marsha Wegner, administratrix of the estate of Christian Wegner (the decedent), appeals a decision of the Superior Court (*Brennan*, J.) finding no uninsured motorist (UM) coverage for the decedent under a policy issued by the defendant, Prudential Property and Casualty Insurance Company (Prudential). We affirm.

The trial court found the following facts to be undisputed for purposes of summary judgment. On October 3, 1998, the decedent was killed in a single-vehicle accident while a passenger in a car owned and operated by John Albini. Albini was driving with a suspended license. At the time of the accident, Albini had an insurance policy in force through Prudential that provided automobile liability and UM coverage. The UM coverage extended to any passenger in Albini's vehicle. The policy excluded UM coverage, however, to any person claiming that a car insured under the policy was uninsured because coverage was excluded or denied under another provision in the policy. Prudential denied UM coverage to the plaintiff under this provision because liability coverage for Albini was excluded under another provision of the policy that excluded coverage for a named insured while his license was suspended or revoked.

The plaintiff filed an action for declaratory judgment. On cross-motions for summary judgment, the trial court held as a matter of law that Prudential was not required to provide UM coverage to the plaintiff.

On appeal, the plaintiff argued in her brief that the UM exclusion at issue is ambiguous and should be construed in favor of the insured. Because the plaintiff conceded at oral argument that there is no ambiguity, however, we consider this argument waived. *See, e.g., State v. Krueger*, 146 N.H. 541, 542 (2001).

The plaintiff next argues that the exclusion is void because it conflicts with RSA 264:15 (Supp. 2001). "In matters of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *Allstate Ins. Co. v. Armstrong*, 144 N.H. 170, 173 (1999) (quotation omitted). We first look to the statute's language itself, and unless the statutory scheme defines the words used, we ascribe to them their plain and ordinary meanings. *See id.* Section I of RSA 264:15 provides, in part:

No policy shall be issued under the provisions of RSA 264:14, with respect to a vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto at least in amounts or limits prescribed for bodily injury or death for a liability policy under this chapter, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or drivers of uninsured motor vehicles, and hit-and-run vehicles because of bodily injury, sickness or disease, including death resulting therefrom. When an insured elects to purchase liability insurance in an amount greater than the minimum coverage required by RSA 259:61, his uninsured motorist coverage shall automatically be equal to the liability coverage elected.

We have recognized that "the parties to an insurance contract may not by agreement limit the required coverage in contravention of the Financial Responsibility Law [RSA chapter 264]." *Armstrong*, 144 N.H. at 172 (quotation and brackets omitted). We have, however, also held:

This court is not at liberty ... to find uninsured motorist coverage when it is not demanded by the statute or to read into the statute a prohibition of an exclusion which is neither expressed nor implied.

Absent statutory provisions or public policy to the contrary, insurers have a right to limit their liability by exclusions written in terms appropriate to convey their meaning and effect to a reasonable person in the position of the insured.

*Charest v. Union Mut. Ins. Co.*, 113 N.H. 683, 686 (1973) (citations omitted).

We conclude that nothing in RSA 264:15 mandates coverage in this case. The statute requires that a policy providing general liability coverage also provide UM coverage with the same monetary limits. *See, e.g., Turner v. St. Paul Prop. & Liab. Ins. Co.*, 141 N.H. 27, 29 (1996). "It is intended to allow policy holders to protect themselves against injury from an uninsured motorist to the extent they protect themselves against liability." *Id.* Conversely, the policy at issue *excludes* UM coverage to the same extent it excludes, among other things, general liability coverage. It provides: "We will not pay for bodily injury or property damage if anyone claims a car insured under this policy is uninsured or underinsured because coverage is denied, excluded or exhausted under another part of this policy." (Bold type omitted.) The plaintiff is claiming UM coverage precisely because Albini's general liability coverage was denied under a

policy provision stating that "[t]he coverages provided by this policy do not apply to any named insured or any household resident during a period of driver's license suspension or revocation."

In *Raudonis v. Insurance Co. of North America*, 137 N.H. 57, 61 (1993), we held that RSA 264:15, I, did not mandate UM coverage to a person who was not insured under a policy's general liability coverage under the circumstances in which she was injured. Similarly, we conclude that where a valid policy exclusion bars liability coverage in a particular situation, RSA 264:15, I, does not mandate UM coverage for the same injury. We hold the liability exclusion for a driver under license suspension valid. RSA 259:61, which defines the term "motor vehicle liability policy" for purposes of, among others, the financial responsibility statute, provides that "[t]he coverages described [in the statutory definition] shall not apply to a named insured or members of the named insured's household whose driver's license has been suspended or revoked." RSA 259:61, III (1993).

Reading RSA 259:61, III in conjunction with the financial responsibility statute leads us to the conclusion that the legislature left insurers free to exclude liability for drivers with suspended licenses. Construing RSA 264:15, I, to require UM coverage when liability coverage is validly excluded pursuant to RSA 259:61, III, would contravene the legislative intent as expressed in the plain language of the latter statute. *Cf. Terranova v. State Farm*, 800 P.2d 58, 62 n.4 (Colo. 1990).

We are not persuaded by the plaintiff's attempt to analogize the instant action to cases in which an insured was injured while trying to stop the theft of his own insured vehicle, because those are not the facts presented here. *See, e.g., State Farm Mut. Auto Ins. Co. v. Nissen*, 851 P.2d 165 (Colo. 1993). Nothing in RSA 264:15 compels us to find coverage in this case.

*Affirmed.*

BROCK, C.J., and DALIANIS and DUGGAN, JJ., concurred.