Merrimack
No. 2003-245

SHERRY SWAIN

v.

EMPLOYERS MUTUAL CASUALTY COMPANY

Argued: November 5, 2003
Opinion Issued: February 20, 2004

*McDowell & Osburn, P.A.*, of Manchester (*Mark D. Morrissette* on the brief and orally), for the plaintiff.

*Brian T. McDonough, P.A.*, of Manchester (*Debra L. Mayotte* on the brief and orally), for the defendant.

DUGGAN, J. In this declaratory judgment action, the plaintiff, Sherry Swain, appeals an order of the Superior Court (*McGuire*, J.) granting summary judgment in favor of the defendant, Employers Mutual Casualty Company (EMCC), denying Swain uninsured motorist coverage under a policy issued by EMCC. *See* RSA 264:15, I (1993). We affirm.

The trial court found the following facts to be undisputed for purposes of summary judgment. In 1999, Swain was employed as a cleaner by Hodges Development Corporation (Hodges). Although Hodges did not require her to do so, Swain used her own vehicle to transport her cleaning supplies.

On December 30, 1999, Swain informed her supervisor that she was taking a break from her duties in order to buy gas for her car. Swain's supervisor allowed her to use the company credit card to refill her gas tank. Swain was returning to the jobsite when she was rear-ended by another driver, Melissa Mardis. The police later determined that Mardis was at fault.

Swain suffered serious injuries. Mardis had insufficient insurance coverage to fully compensate her and Swain did not carry insurance on her own car. Therefore, Swain sought coverage under the uninsured motorist provisions of Hodges' insurance policy, which was issued by EMCC. EMCC denied Swain's claim.

In November 2001, Swain filed a petition for declaratory judgment, seeking a declaration that EMCC must pay for the injuries she sustained. The parties filed cross-motions for summary judgment. Swain argued that although she was not specifically covered by Hodges' uninsured motorist policy, she was entitled to judgment as a matter of law because EMCC is required by RSA 264:15, I, to provide uninsured motorist coverage to the same extent it provides general liability coverage. EMCC, on the other hand, argued that when an insured elects to purchase liability insurance in an amount greater than the minimum coverage required by statute, RSA

264:15, I, does not require the same scope of coverage but only that "the monetary limits of uninsured motorist coverage be the same as the monetary limits under the general liability section of a policy."

The trial court granted EMCC's motion for summary judgment and ruled that although RSA 264:15, I, requires the amount of coverage to be the same under the general liability and uninsured motorist policies, it "does not require the same coverage for vehicles and persons under the uninsured motorist policy as it does under the general liability policy." This appeal followed.

In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *Big League Entm't v. Brox Indus.*, 149 N.H. 480, 482 (2003). If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment. *Id.* We review the trial court's application of the law to the facts *de novo. Id.*

Swain first argues that under RSA 264:15, I, a person who is insured in a particular situation under a policy's general liability coverage must also be covered in that same situation for purposes of uninsured motorist coverage. Specifically, she notes that the EMCC policy provides coverage for "non-owned autos" only under the general liability provisions, and provides coverage for "owned autos" under both the general liability and the uninsured motorist provisions. Swain argues that this discrepancy in the parameters of coverage violates RSA 264:15, I.

"In matters of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *Wegner v. Prudential Prop. & Cas. Ins. Co.*, 148 N.H. 107, 108 (2002) (quotation omitted). "We first look to the statute's language itself, and unless the statutory scheme defines the words used, we ascribe to them their plain and ordinary meanings." *Id.*

Uninsured motorist statutes are designed "to provide an innocent victim a source of restitution when that injured party cannot recover the full amount of damages from the tortfeasor." 4 D. LEITNER ET AL., LAW AND PRACTICE OF INSURANCE COVERAGE LITIGATION § 51.7(a), at 51-40 (2000). Uninsured motorist coverage is not intended "to be the only source of insurance for individuals. Rather, it [is] designed to act in concert with already existing standard liability policies." *Id.* § 51.7(a)(1), at 51-41.

New Hampshire's uninsured motorist statute, RSA 264:15, I, provides in pertinent part:

> No policy shall be issued under the provisions of RSA 264:14, with respect to a vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto at least in amounts or limits prescribed for bodily injury or death for a liability policy under this chapter, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or drivers of uninsured motor vehicles, and hit-and-run vehicles because of bodily injury, sickness or disease, including death resulting therefrom. When an insured elects to purchase liability insurance in an amount greater than the minimum coverage required by RSA 259:61, his uninsured motorist coverage shall automatically be equal to the liability coverage elected.

The statute "is intended to allow policy holders to protect themselves against injury from an uninsured motorist to the extent they protect themselves against liability." *Wegner*, 148 N.H. at 109 (quotation omitted). The first sentence of the statute sets forth the basic requirement that when an insurer provides general liability coverage, it additionally must provide uninsured motorist coverage in the same amounts and limits. *See Gisonni v. State Farm Mut. Auto. Ins. Co.*, 141 N.H. 518, 519 (1996). The second sentence of RSA 264:15, I, commonly referred to as the elective coverage provision, "mandates that uninsured motorist coverage shall automatically be equal to liability coverage when a policyholder elects to purchase liability insurance in an *amount* greater than the minimum coverage required by RSA 259:61." *Id.* at 520 (quotation omitted). "By its own terms, the elective coverage provision applies when an insured purchases liability insurance in an *amount* greater than the minimum statutory requirement." *Id.* (quotation omitted).

In contrast to the first sentence of RSA 264:15, I, which includes the phrase "amounts or limits," the elective coverage provision includes only the word "amount." *See* RSA 264:15, I. When we previously construed this statute, we reasoned that the legislature was fully aware that the words "amounts" and "limits" were included in the first sentence of RSA 264:15, I, when it later added the elective coverage provision. *Gisonni*, 141 N.H. at 520. Thus, we concluded that the legislature intended for the elective coverage provision to require only that when an insured purchases general liability coverage in an amount greater than the minimum statutory requirement, *see* RSA 259:61, the insurer must provide uninsured motorist coverage in an amount equal to the general liability coverage, *Gisonni*, 141 N.H. at 520.

Our decision today is controlled by *Gisonni*. In *Gisonni*, the general liability policy covered losses in the United States, Canada and Mexico within fifty miles of the United States border, but limited uninsured motorist coverage to the United States and Canada. *Id.* at 518-19. The plaintiff argued that this limitation violated the elective coverage provision in RSA 264:15, I. *Id.* at 520. We held, however, that in contrast to the first sentence of RSA 264:15, I, the elective coverage provision does not require an insured to purchase uninsured motorist coverage extending beyond the minimum territorial limit requirements even if the insured purchases general liability insurance extending beyond the minimum territorial limit requirements. *Id.* at 519. Thus, under *Gisonni*, the elective coverage provision does not mandate complete mutuality between general liability and uninsured motorist coverage. *Id.* at 520.

■ Here, the EMCC policy provides general liability coverage in the amount of one million dollars, which is in excess of the statutory minimum, and therefore, the only issue before us is the effect of the elective coverage provision of RSA 264:15, I. The policy provides liability coverage for "non-owned autos" that are used for business purposes. The policy, however, provides uninsured motorist coverage only for "owned autos." In light of *Gisonni*, we are forced to reject Swain's argument that the EMCC policy is required to provide uninsured motorist coverage with a scope equal to the scope provided by the general liability coverage. EMCC was simply required to provide uninsured motorist coverage in an amount equal to the amount of general liability coverage purchased by Hodges. Thus, the EMCC policy complies with the statutory mandate and we affirm the superior court's grant of summary judgment in favor of EMCC.

To support her argument, Swain relies upon language in *Raudonis v. Insurance Company of North America*, 137 N.H. 57, 61 (1993), where we stated: "The statute also requires that a person who is an insured in a particular situation under a policy's general liability coverage also be covered in that situation under the policy's uninsured motorist section." If the quoted language was intended to be read as broadly as Swain suggests, however, we surely would have reached a different result in *Gisonni*. As we did in *Gisonni*, we decline to apply the dictum in *Raudonis* to the factual context of the present case. *Gisonni*, 141 N.H. at 521.

Swain additionally argues that the EMCC policy contains "conflicting and unclear definitions of an insured party within the language of [the] uninsured motorist provisions" and that the "terms of the liability coverage are nearly impossible to discern and ultimately do not contemplate the situation presented by Sherry Swain's use of her own

motor vehicle for the benefit of her employer." Swain argues that the conflicting definitions render the policy ambiguous, and therefore it must be construed in favor of coverage.

The interpretation of insurance policy language is ultimately an issue of law for this court to decide. *Whilcomb v. Peerless Ins. Co.*, 141 N.H. 149, 150 (1996). A term is ambiguous if the contracting parties could reasonably disagree about its meaning or application. *Id.* at 151. We will not, however, force an ambiguity simply to resolve it against an insurer. *Id.*

Here, the general liability provisions of the EMCC policy apply to "non-owned autos" that are used for business purposes. In contrast, the uninsured motorist provisions of the policy apply only to "owned autos." This lack of mutuality in the policy's scope of coverage does not render the terms of the policy ambiguous. The meaning and application of the terms in the EMCC policy are clear, and therefore we decline to force an ambiguity in order to resolve it against EMCC. *See id.*

Finally, our holding today is consistent with the bedrock principle of the uninsured motorist statute, which is "to allow policy holders to protect themselves against injury from an uninsured motorist to the extent they protect themselves against liability." *Wegner*, 148 N.H. at 109. Here, Swain chose not to purchase any liability insurance. By choosing not to carry liability insurance, she relinquished the protection afforded by the uninsured motorist statute.

*Affirmed.*

NADEAU and DALIANIS, JJ., concurred; BRODERICK, C.J., with whom BROCK, C.J., retired, specially assigned under RSA 490:3, joined, dissented.

BRODERICK, C.J., with whom BROCK, C.J., retired, specially assigned under RSA 490:3, joins, dissenting. I do not read RSA 264:15, I, as narrowly as the majority. I dissented in *Gisonni v. State Farm Mutual Auto Insurance Co.*, 141 N.H. 518 (1996), upon which the majority relies, because I do not believe that the elective coverage language of the uninsured motorist statute was intended to allow insurers to uncouple increased liability amounts from increased uninsured motorist coverage. To do so would, in my judgment, defeat New Hampshire's public policy of placing insured persons in the same position that they would have been if the offending uninsured motorist had possessed comparable liability insurance. Apparently, the *Gisonni* decision has not been accepted in those jurisdictions that have addressed similar issues. *See State Farm Mut. Auto. Ins. Co. v. Marquez*, 28 P.3d 1132, 1135 (N.M. Ct. App.) ("New

Hampshire is the only jurisdiction we could find that has held that an uninsured motorist statute does not require that uninsured motorist coverage be territorially coextensive with liability coverage."), *cert. denied*, 28 P.3d 1099 (N.M. 2001). The companion protection of automatically increased uninsured motorist coverage, afforded under the uninsured motorist statute to those who elect to purchase increased liability amounts, would be illusory in many cases if the statute were interpreted as the majority suggests.

The majority provides no clear explanation as to why public policy would permit uncoupling of liability coverage and uninsured motorist coverage for those who purchase increased liability protection. The very purpose of the uninsured motorist statute, as the majority correctly points out, is "to allow policy holders to protect themselves against injury from an uninsured motorist to the extent they protect themselves against liability." *Wegner v. Prudential Prop. & Cas. Ins. Co.*, 148 N.H. 107, 109 (2002) (quotation omitted). To conclude that the injured insured in this case, who was entitled to increased liability coverage, could be lawfully denied increased uninsured motorist benefits undercuts this bedrock principle. The language in *Raudonis v. Insurance Co. of North America*, 137 N.H. 57, 61 (1993), which the majority discounts, correctly affords, in my opinion, the guaranteed protection of increased uninsured motorist coverage that the uninsured motorist statute was intended to accomplish.

The majority correctly recites that this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *See Wegner*, 148 N.H. at 108. Further, we look to the statute's language itself, and unless the statutory scheme defines the words used, we ascribe to them their plain and ordinary meanings. *Id.* The majority proceeds to distinguish the first sentence of RSA 264:15, I, which includes the phrase "amounts or limits," from the elective coverage provision, because the latter only includes the word "amount." It then adopts the reasoning of *Gisonni* in concluding "that the legislature intended for the elective coverage provision to require only that when an insured purchases general liability coverage in an amount greater than the minimum statutory requirement ... the insurer must provide uninsured motorist coverage in an amount equal to the general liability coverage."

This conclusion, based solely on the absence of the word "limits" in the elective coverage provision, ignores the fact that the legislature chose to use the word "coverage" on two occasions in the very same provision. While the majority reads the phrase "amounts or limits" as two different terms, I believe they are correctly read as simply alternative terms, both of which are encompassed in the term "coverage." As such, the plaintiff in

this action should be entitled to recover under the uninsured motorist provision of the defendant's policy. Under the majority's interpretation of the statute, the plaintiff recovers nothing under Hodges' uninsured motorist coverage issued by Employers Mutual Casualty Company. As I do not believe that is the intent of the statute, I respectfully dissent.