NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Belknap
No. 2015-0477


MICHAEL NEWELL

v.

MARKEL CORPORATION & a.

Argued: January 13, 2016
Opinion Issued: June 28, 2016


Matthew J. Lahey, P.A., of Laconia (Matthew J. Lahey on the brief and orally), for the plaintiff.


Morrison Mahoney LLP, of Boston, Massachusetts (Kevin Truland on the brief and orally), for the defendants.


HICKS, J. The defendants, Markel Corporation, Markel Services, Inc. (Markel Services), and Essex Insurance Company (Essex), appeal an order of the Superior Court (O'Neill, J.) denying their motions for summary judgment and granting summary judgment to the plaintiff, Michael Newell, in this insurance coverage action. We affirm in part, reverse in part, and remand.

The following facts were recited in the trial court's order or appear in the record before us. On or about June 12, 2010, Newell was allegedly injured in a slip and fall accident at a property owned by Brames, Inc. (Brames) in Laconia.

Brames was insured under an Amusement Park General Liability Policy (the Policy) issued by Essex. Essex is a subsidiary of Markel Corporation and Markel Services is Markel Corporation's claims handling branch.

Newell's alleged injury occurred when he slipped on a wet bathroom floor on Brames's property during Motorcycle Week 2010. The floor had recently been washed by Ivy Banks (Banks) of I&L Cleaning Services. Banks had been cleaning the bathrooms at the Brames's property during the annual Motorcycle Week for several years up to and including 2010 under an arrangement that he had entered into with Brames's co-owner and treasurer, Robert Ames. Under this arrangement, Banks maintained the bathrooms on the Brames property during Motorcycle Week in exchange for tips he received from patrons using the bathrooms. Banks estimated that he would receive between $75 and $100 in tips per day during Motorcycle Week, and he neither sought nor received any other payment for his services. Banks offered similar services at other motorcycle shows and events throughout the country.

Newell filed two personal injury actions arising from his slip and fall. In the first (the Brames action), he sued Brames for negligence in leaving the floor wet without a warning. That action concluded with an out-of-court settlement.

In the second lawsuit (the Banks action), Newell sued Banks. The defendants received notice of the Banks action, but declined to defend Banks or intervene. Banks, although properly served, filed neither an appearance nor an answer and was defaulted. A default judgment was entered against Banks for $300,000, the full amount of damages sought by Newell.

Newell then brought the instant action to recover the $300,000 default judgment from the defendants. In his complaint, Newell alleged that "Banks was an insured under a liability insurance policy issued by Markel/Essex to Brames, and that Markel/Essex breached the insurance contract by failing to defend and indemnify Banks after receiving notice of the suit." Newell alleged that he was "a third party beneficiary under the contract."

In ruling on the parties' cross-motions for summary judgment, the court noted that the only issue before it was whether Banks was an insured under Brames's policy with Essex at the time of Newell's slip and fall. The court concluded: "[U]nder a reasonable interpretation of the relevant language in the Essex policy, Mr. Banks qualified as a 'volunteer worker.' Because more than one reasonable interpretation is possible, and one interpretation provides coverage, the Court construes this language against the defendants and in favor of the plaintiff." (Quotation, citation, and brackets omitted.)

On appeal, the defendants argue that the trial court erred in determining that the language of the Policy is ambiguous and that Banks was a "volunteer worker" under the Policy. In addition, Markel Corporation and Markel Services

2

claim that they are entitled to summary judgment because "they did not issue the policy in dispute and the plaintiff did not object to their motion for summary judgment." Newell counters that Banks is a "volunteer worker" as defined under the Policy and that Essex is barred from denying the same under the doctrine of judicial estoppel.

In this appeal from the disposition of cross-motions for summary judgment, we employ the following standard of review:

> We consider the evidence in the light most favorable to each party in its capacity as the nonmoving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law. If our review of that evidence discloses no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law, then we will affirm the grant of summary judgment. We review the trial court's application of the law to the facts de novo.

Conant v. O'Meara, 167 N.H. 644, 648 (2015) (quotations, citations, and brackets omitted).

We first address the contention that summary judgment should have been granted to Markel Corporation and Markel Services. Those entities moved for summary judgment asserting that because Newell's action was for breach of contract, and neither Markel Corporation nor Markel Services had a contractual relationship with Brames, the complaint failed to state a claim against them. Newell specifically noted in his own motion for summary judgment and objection to the summary judgment motion of defendant Essex that he did not object to Markel Corporation and Markel Services's motion. Newell's counsel at oral argument confirmed that this case concerns only Essex. Accordingly, we reverse the trial court's summary judgment rulings with respect to Markel Corporation and Markel Services and remand for the entry of summary judgment in favor of those entities. The remainder of this opinion concerns only defendant Essex.

We now turn to the issue of coverage under the Policy. "The interpretation of insurance policy language is a question of law for this court to decide." Great Am. Ins. Co. v. Christy, 164 N.H. 196, 200 (2012). "We construe the language of an insurance policy as would a reasonable person in the position of the insured based upon a more than casual reading of the policy as a whole." Colony Ins. Co. v. Dover Indoor Climbing Gym, 158 N.H. 628, 630 (2009). "Policy terms are construed objectively, and where the terms of a policy are clear and unambiguous, we accord the language its natural and ordinary meaning." Id. "If more than one reasonable interpretation is possible, and an interpretation provides coverage, the policy contains an ambiguity and will be

3

construed against the insurer." Great Am. Dining v. Philadelphia Indem. Ins. Co., 164 N.H. 612, 616 (2013) (quotation omitted).

The issue before us is whether Banks is an insured under the Policy as a volunteer worker. The Policy provides:

> And your **Volunteer Workers** are **Insureds** only for activities or work they conduct or perform:
>
> - at your direction; and
> - within the scope of their duties for you.

(Emphasis omitted.) The Policy defines the term volunteer worker as follows:

> **Volunteer Worker** means any person who:
>
> - isn't an employee or a leased temporary worker;
> - donates his or her work; and
> - isn't paid a fee, salary or other compensation for that work.

(Emphasis omitted.)

Essex argues that "Banks fails to qualify as a 'volunteer worker'" for three reasons: (1) he "did not donate his services"; (2) he "did receive compensation in the form of tips"; and (3) he "did not act at Brames's direction." We will address each in turn, beginning with the contention that Banks "did not 'donate' his work under the common meaning of that term." Essex asserts that "[t]he common meaning of the term 'donate' is to present a gift or give property or money without consideration," and argues that "Banks did not donate or bestow a gift of his services to Brames" because "Banks benefited from his use of" Brames's property.

Newell counters that the term "donates" cannot mean "to give without compensation" when "the definition already includes 'isn't paid . . . other compensation' in the conjunctive." As Newell points out, "the usual rule[] of construction [is] that effect is to be given to all the clauses of a contract if it reasonably may be." Shelby &c. Co. v. Lynch, 89 N.H. 510, 512 (1938).

Construing a similar definition of "volunteer worker," the court in North Carolina Farm Bureau Mutual Insurance v. Burns, 767 S.E.2d 109 (N.C. Ct. App. 2014), concluded that "the term 'donate' must encompass more than working without receiving payment. Otherwise, the policy language that the work must be without 'fee, salary or other compensation' would be superfluous and the term 'donate' would have no effect." N. Carolina Farm Bureau Mut. Ins., 767 S.E.2d at 112. The court then reasoned:

4

Having determined that the term "donate" as used in the policy must mean more than "without compensation," and in order to give effect to every provision of the policy definitions, we consider the context in which the term is used: defining "volunteer worker." We note that the common everyday meaning of the word "volunteer" is characterized by not only lack of compensation, but also choice and free will. Therefore, considering its common definitions, its use in the context of working as a volunteer, and the policy language as a whole, we conclude that to "donate" one's work under the terms of the policy at issue necessitates the presence of choice and free will.

Id. at 112-13 (footnote omitted). Relying upon North Carolina Farm Bureau Mutual Insurance, Newell contends that "[a] reasonable interpretation of 'donates' in the context of this policy is to act by choice, free will and voluntarily, which Banks did."

We conclude that the foregoing arguments demonstrate a "reasonable disagreement between [the] contracting parties lead[ing] to at least two interpretations of the [Policy's] language," Colony Ins. Co., 158 N.H. at 630 (quotation omitted). Although Essex's interpretation employs the more common meaning of "donates," Newell points out nonnegligible flaws with that interpretation and posits an alternative that has garnered acceptance by at least one court. Accordingly, we conclude that the term "donates" is ambiguous, see id., and we construe it in favor of coverage. See High Country Assocs. v. N.H. Ins. Co., 139 N.H. 39, 44 (1994).

Essex next argues that Banks does not meet the definition of "volunteer worker" because the tips he received from patrons "amount to compensation under the ordinary meaning of that term." Essex cites cases and statutes that equate tips with compensation in other contexts. See, e.g., Marden v. State, 122 N.H. 751, 753-54 (1982) (construing the term wages in unemployment compensation statute to include tips received by waitress).

Newell, on the other hand, citing both the dictionary definition and case law differentiating compensation and gratuities in other contexts, contends that "[c]ompensation is for something that is owed, and not a gratuity or gift." Newell also invokes the doctrines of ejusdem generis and noscitur a sociis, as well as the presence of the word "other" before "compensation" in the definition of "volunteer worker," to argue that compensation must be construed to be mean something like "fee" and "salary." Newell also notes that "[t]he policy language is unclear as to whether [the] 'fee, salary or other compensation' applies just to [payments by] the policy holder Brames or includes receipts from third parties." Newell points out that many insurance companies define "volunteer worker" with additional language specifying that the volunteer worker may not receive compensation from either the policy holder or anyone

5

else.  See, e.g., Dry v. United Fire & Cas. Co., Inc., 420 S.W.3d 593, 594-95 (Mo. Ct. App. 2013) (quoting policy defining "volunteer worker," in pertinent part, to be "a person who . . . is not paid a fee, salary or other compensation by you or anyone else for their work performed for you").  He argues that "[t]he practice of adding this language is so wide spread that it is reasonable to infer that Essex intended by omitting it that only fee, salary or other compensation by Essex itself would bar coverage."

We again conclude that although Essex has put forth a reasonable interpretation of the term "compensation," Newell has identified an ambiguity by articulating another reasonable construction.  See Colony Ins. Co., 158 N.H. at 630.  Accordingly, we will construe that term in favor of coverage.  See High Country Assocs., 139 N.H. at 44.

Finally, Essex contends that Banks does not meet the coverage requirement of having acted at Brames's direction.  Citing the dictionary definition of "direction," Essex argues that "in the context of the present case, the term 'at your direction' connotes supervision or guidance of an action or operation, or an order or command."  Essex then argues:

> Here, the undisputed facts demonstrate that Banks did not conduct or perform work at Brames's direction.  Ames testified that when Banks first came to provide services at the [property], he did not show him what to do or tell him what to do.  He showed Banks where the bathrooms were, but did not point [out] the area he wanted him to clean.  When asked how I&L Cleaning Services would know what they are supposed to do with the two places where there are portable toilets, Ames testified that "They're bathroom cleaning people.  My assumption was that they knew what to do, that I didn't have to tell them anything."

(Citation omitted.)

Ames's testimony suggests that the degree of supervision of Banks's work — or lack thereof — by Brames was not a consequence of their work arrangement but of the nature of the work itself.  Cf. Borello & Sons v. Dept. of Indus. Rel., 769 P.2d 399, 408 (Cal. 1989) (noting, in finding sharefarmers to be employees for purposes of workers' compensation law that "[i]t is the simplicity of the work, not the harvesters' superior expertise, which makes detailed supervision and discipline unnecessary").  As Newell contends, Banks's services were "not complex" and did not constitute "work that required any supervision or instruction."  Newell therefore argues that, in this context, the policy term "at your direction" means "with the knowledge and approval of Brames."

6

We agree with Newell that, at least in the context of unskilled labor, the phrase "at your direction" can reasonably be read to mean something other than "supervision or guidance" as urged by Essex. The provision at issue conditions coverage on the worker conducting or performing the activities "at [the policyholder's] direction" and "within the scope of their duties for [the policyholder]." Taken together, these two conditions foreclose action taken on the worker's own initiative and unrelated to the agreed-upon task — and certainly foreclose any "frolic of his own." Cf., e.g., Perlstein v. American Exp. Co., 59 N.E. 194, 195 (Mass. 1901) (noting that the question for the jury in determining whether defendant was liable for negligence of its employee driver was "not whether the defendant owned the team, but whether the person who was driving it negligently was then acting for the defendant in doing the work which he was directed to do" or "was off 'on a frolic of his own'"); Shakra v. Benedictine Sisters, 131 N.H. 417, 422 (1989) (concluding sufficient evidence supported trial court's finding that former president of defunct corporate defendant "entered into [a purchase and sale] agreement while 'on a frolic of her own,' without . . . authorization or approval"). In this sense, "at your direction" could reasonably mean "authorized by you" or "instructed by you to do." Employing that interpretation here, Banks would not be acting at Brames's direction if, for instance, he unilaterally decided to tend bar at Brames's establishment, but would be acting at Brames's direction in carrying out the very task Brames engaged him to do — clean the bathrooms.

We conclude that, at the very least, the phrase "at your direction" is susceptible of two reasonable interpretations under the circumstances presented here. See Colony Ins. Co., 158 N.H. at 630. The phrase is therefore ambiguous and will be construed in favor of coverage. See High Country Assocs., 139 N.H. at 44. Having determined that all of the disputed provisions must be construed in favor of coverage, we conclude that the trial court did not err in ruling that Banks was a "volunteer worker" under the Policy. Given this conclusion, we need not address Newell's judicial estoppel argument.

Affirmed in part; reversed in part; and remanded.

DALIANIS, C.J., and CONBOY, LYNN, and BASSETT, JJ., concurred.

7