NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2017-0717

JOSEPH A. SANTOS

v.

METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY

Argued: September 27, 2018
Opinion Issued: January 17, 2019

Parnell, Michels & McKay, PLLC, of Londonderry (Rory J. Parnell on the brief and orally), for the plaintiff.

Desmarais Law Group, PLLC, of Manchester (Debra L. Mayotte on the brief and orally), for the defendant.

HANTZ MARCONI, J. The defendant, Metropolitan Property and Casualty Insurance Company (Metropolitan), appeals an order of the Superior Court (Schulman, J.) partially granting and partially denying its summary judgment motion as well as a cross-motion filed by the plaintiff, Joseph A. Santos. Santos held a personal excess liability policy with Metropolitan that included excess underinsured motorist (UIM) coverage. After Metropolitan denied a claim made by Santos for excess UIM benefits, he brought this declaratory judgment action. The trial court ruled that Metropolitan was liable to Santos for excess UIM benefits. Metropolitan argues that the trial court

erred in so holding because Santos's policy requires, as a precondition to receiving excess UIM benefits, that he carry a certain amount of underlying insurance coverage, and Santos did not do so. Santos argues that his lack of sufficient underlying coverage allows Metropolitan to reduce its excess UIM liability but not escape it altogether. We affirm.

The trial court determined that the following material facts are undisputed. Santos alleges that he was driving his motorcycle when he was struck by an SUV. He claims that the collision was the result of the other driver's negligence and that he suffered debilitating injuries in the accident. Santos further claims that, although the other driver carried insurance, his damages exceed the other driver's policy limits. Santos insured his motorcycle with a policy from Allstate Insurance Company. That policy insured Santos's motorcycle for $25,000 per person and $50,000 per accident. He claims that the Allstate policy also is insufficient to fully compensate him for the injuries he suffered in the accident.

Santos also held the policy with Metropolitan that is at issue. It provided Santos with excess personal liability coverage as well as excess UIM coverage. Santos submitted a claim to Metropolitan for excess UIM benefits pursuant to this policy. Metropolitan denied his claim, asserting that the endorsement in the policy that grants excess UIM coverage contains a precondition requiring Santos to maintain a certain amount of underlying insurance on his motorcycle, which Santos did not maintain.

Santos then filed this declaratory judgment action to determine his coverage under the Metropolitan policy. The parties filed cross-motions for summary judgment. The trial court ruled that, notwithstanding Santos's failure to maintain the underlying insurance coverage specified in the excess UIM endorsement, Metropolitan was required to provide Santos with excess UIM benefits for the alleged injuries he suffered as a result of the accident. The trial court further ruled that Metropolitan was liable to Santos for excess UIM benefits only to the extent and in the amount it would have been liable had he maintained the amount of underlying coverage specified in the excess UIM endorsement. This appeal followed.

In an appeal from the disposition of cross-motions for summary judgment, we consider the evidence in the light most favorable to each party in its capacity as the nonmoving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law. Newell v. Markel Corp., 169 N.H. 193, 195 (2016). If our review of that evidence discloses no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law, then we will affirm the grant of summary judgment. Id. We review the trial court's application of the law to the facts de novo. Id.

2

In a declaratory judgment action to determine the coverage of an insurance policy, the burden of proof is always on the insurer, regardless of which party brings the petition. Exeter Hosp. v. Steadfast Ins. Co., 170 N.H. 170, 174 (2017). The interpretation of insurance policy language is a question of law that this court decides de novo. Id. The fundamental goal of interpreting an insurance policy, as in all contracts, is to carry out the intent of the contracting parties. Id. To discern the parties' intent, we begin with an examination of the insurance policy language. Id. In interpreting policy language, we look to the plain and ordinary meaning of the policy's words in context. Id. We construe the terms of the policy as would a reasonable person in the position of the insured based upon more than a casual reading of the policy as a whole. Id. This is an objective standard. Id.

Insurers are free to contractually limit the extent of their liability provided that they violate no statutory provision by doing so. Russell v. NGM Ins. Co., 170 N.H. 424, 429 (2017). Limitations must be stated in such clear and unambiguous terms, however, that the insured can have no reasonable expectation that coverage exists. Id. In determining whether an ambiguity exists, we look to the claimed ambiguity and consider it in its appropriate context. Id. If one of the reasonable meanings of the language favors the policyholder, the ambiguity will be construed against the insurer, in order to honor the insured's reasonable expectations. Id. This doctrine is rooted in the fact that insurers, as drafters of their policies, have a superior understanding of the terms they employ. Exeter Hosp., 170 N.H. at 174. However, when the policy language is clear, this court will not perform amazing feats of linguistic gymnastics to find a purported ambiguity simply to construe the policy against the insurer and create coverage where it is clear that none was intended. Russell, 170 N.H. at 429.

We turn to an examination of the policy itself. The Metropolitan policy issued to Santos may be broken into three parts for the sake of analysis. The first part consists of declarations. The declarations state the amount of excess personal liability coverage as well as excess UIM coverage available under the policy, in addition to the required amounts of underlying insurance. Automobile insurance is listed as a type of required underlying insurance. The declarations further state that the policy was "issued and rated" based in part on the respective years, manufacturers, models, and body types of Santos's vehicles. (Capitalization omitted.) The second part of the policy consists of the policy form itself. Section I of the policy form is the grant of excess personal liability coverage. Section II contains exclusions from coverage. Section III establishes conditions of coverage. Section IV provides definitions of certain terms used elsewhere in the policy. Of importance to this case is Section III, paragraph 7 of the policy form, which provides:

This policy requires **you** to have the types and amounts of insurance shown in the declarations pages.  If **you** fail to maintain the **required underlying policies** for any reason, or if no insurance is available because an **insured** has breached a term or condition of any **underlying policy**, **we** will be liable only for the amount that **we** would have been liable for had **you** maintained the required insurance.  **You** will be liable for the amount that would have been covered by the **underlying policy**.

This paragraph establishes that, should Santos fail to maintain the amount of underlying insurance specified in the declarations pages, Metropolitan will only be liable for the amount it would have had to pay had Santos maintained the correct amount of underlying coverage.

The third part of the policy consists of endorsements attached to the policy form.  Of importance to this case is an endorsement titled "EXCESS UNINSURED/UNDERINSURED MOTORISTS COVERAGE ENDORSEMENT." (Bolding omitted.)  This endorsement states, "The Personal Excess Liability Policy to which this endorsement applies, is extended to provide Excess Uninsured/Underinsured Motorists Coverage up to the limits shown in the declarations of the policy."  This language grants excess UIM coverage.  The endorsement also states, "As a precondition to receiving the benefits under this endorsement, you shall maintain the underlying policy of automobile insurance having uninsured/underinsured motorists coverage with split limits equal to or greater than $100,000/$300,000 bodily injury or with a single limit of $300,000 bodily injury."

The parties agree that the Allstate policy Santos had for his motorcycle is the only underlying insurance policy relevant to this case.  Santos concedes that the Allstate policy did not provide the amount of underlying insurance specified by the excess UIM endorsement.  He argues that he is nevertheless entitled to excess UIM benefits because the policy read as a whole allows Metropolitan to offset its excess UIM liability by the underlying insurance limits specified in the UIM endorsement, but it does not allow Metropolitan to escape liability altogether.  In the alternative, Santos argues that the difference between Section III, paragraph 7 and the excess UIM endorsement with respect to the consequences for his failure to maintain the required amount of underlying insurance renders the policy ambiguous, and that the ambiguity must be construed in his favor.  See U.S. Automobile Assoc. v. Wilkinson, 132 N.H. 439, 442 (1989).  Additionally, he references RSA 264:15, I (2014) (amended 2015), and suggests that construing the policy to deny excess UIM benefits in these circumstances may violate that statute.

By contrast, Metropolitan argues that the excess UIM endorsement makes Santos's maintenance of the specified amount of underlying insurance a

condition precedent to the availability of any excess UIM benefits.[1] Metropolitan also argues that the difference between Section III, paragraph 7 and the excess UIM endorsement does not render the policy ambiguous because the purpose of an endorsement is, by definition, to modify the policy to which it is attached; therefore, the excess UIM endorsement unambiguously states the rule for what is to happen given Santos's failure to maintain the required amount of underlying insurance. Finally, Metropolitan asserts that the policy complies with RSA 264:15, I.

As an initial matter, we conclude that the excess UIM endorsement contains a condition precedent to excess UIM coverage that conflicts with Section III, paragraph 7. A condition precedent is a provision that makes an act or event contingent upon the performance or occurrence of another act or event. Appeal of City of Manchester, 144 N.H. 386, 389 (1999). Conditions precedent are not favored, however, and we will not construe contractual provisions as conditions precedent unless required by the plain language of the agreement. Holden Eng'g and Surveying v. Pembroke Rd. Realty Trust, 137 N.H. 393, 396 (1993). The plain language of the excess UIM endorsement requires such a construction here. The excess UIM endorsement makes Santos's maintenance of the specified amount of underlying insurance a "precondition" on the availability of excess UIM benefits. In general, provisions which commence with words such as "if," "on condition that," "subject to," and "provided" create conditions precedent. Id. The excess UIM endorsement's use of the materially identical term "precondition" creates a condition precedent.

So construed, the excess UIM endorsement is in direct conflict with Section III, paragraph 7. These provisions provide incompatible remedies to Metropolitan in the event of Santos's failure to maintain sufficient underlying coverage: the excess UIM endorsement purports to allow Metropolitan to entirely deny excess UIM benefits should Santos fail to maintain sufficient underlying coverage; Section III, paragraph 7, by contrast, does not allow Metropolitan to entirely deny benefits for such a failure. See Israel v. State Farm Mut. Auto. Ins. Co., 789 A.2d 974, 976-77 (Conn. 2002) (finding insurance provisions in irreconcilable conflict where one provision purported to allow insurer to entirely deny UIM coverage if the insured did not maintain required amount of underlying coverage and other provision stated that insurer would be entitled to a credit in the amount of the underlying insurance limits

---

[1] Metropolitan also argues that the excess UIM endorsement contains a second precondition. The excess UIM endorsement provides, "the benefits of this [endorsement] shall apply only after the *underlying policy*'s uninsured/underinsured motorists coverage limits and all other collectible uninsured/underinsured motorists benefits have been paid in full." Metropolitan asserts that the underlying policy limits will never be paid in full because Santos did not maintain the required amount of underlying insurance, thus "this pre-condition can never be satisfied under the circumstances of this case." Metropolitan has failed to develop this argument sufficiently for our review. Thus we do not consider it. See Lennartz v. Oak Point Associates, P.A., 167 N.H. 459, 464 (2015).

set forth in the declarations if insured did not maintain required amount of underlying coverage).

Santos argues, and the trial court concluded, that the conflict between the excess UIM endorsement and Section III, paragraph 7 renders the policy ambiguous, requiring a construction in his favor. Santos is correct to note that, when an ambiguity arises from conflicting provisions of a policy, we resolve the inconsistency in favor of the insured. See Kelly v. Prudential Prop. & Cas. Ins. Co., 147 N.H. 642, 643 (2002). However, we do not agree that the conflict between the excess UIM endorsement and Section III, paragraph 7 creates an ambiguity. The purpose of an endorsement is, by definition, to change the terms of the policy to which it is attached. See Ellis v. Royal Ins. Co., 129 N.H. 326, 338 (1987), superseded by statute on other grounds as stated in Cadell v. XL Specialty Ins. Co., Civil No. 11-cv-304-JD, 2012 WL 2359975 at *7 (D.N.H. June 20, 2012). "It is the general rule that . . . where the provisions in the body of the policy and those in the endorsement or rider are in irreconcilable conflict the provisions contained in the endorsement or rider will prevail over those contained in the body of the policy." National Union Fire Ins. Co. v. Lumbermens Mut., 385 F.3d 47, 55 (1st Cir. 2004) (quotation omitted); see also Schultz v. Hartford Fire Ins. Co., 569 A.2d 1131, 1136 (Conn. 1990); Cheaters, Inc. v. United Nat. Ins. Co., 41 A.3d 637, 644 n.9 (R.I. 2012); 45 C.J.S. Insurance § 607, at 70 n.14 (2018) ("An endorsement cannot be read apart from the main policy, and added provisions will supersede previous policy terms to the extent they are truly in conflict."). Thus, there is no ambiguity: the conflict between the excess UIM endorsement and Section III, paragraph 7 compels the conclusion that the endorsement controls. See Schultz, 569 A.2d at 1136.

This does not end our inquiry, however. As the trial court noted, whether this construction of the policy complies with RSA 264:15, I, must still be determined. This requires us to engage in statutory interpretation. In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of a statute considered as a whole. STIHL, Inc. v. State of N.H., 168 N.H. 332, 334 (2015). When construing a statute, we first examine the language found in the statute, and, where possible, we ascribe the plain and ordinary meanings to the words used. Id. We interpret statutory provisions in the context of the overall statutory scheme. Id. at 335.

The trial court correctly noted that construing the policy to include a limitation on the availability of excess UIM benefits that was not also placed on the availability of excess liability benefits would be in tension with RSA 264:15, I. At the time of the accident in this case, that statute provided in pertinent part that:

No policy shall be issued under the provisions of RSA 264:14, with respect to a vehicle registered or principally garaged in this state, unless coverage is provided therein or supplemental thereto at least in amounts or limits prescribed for bodily injury or death for a liability policy under this chapter, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or drivers of uninsured motor vehicles, and hit-and-run vehicles because of bodily injury, sickness, or disease, including death resulting therefrom. When an insured elects to purchase liability insurance in an amount greater than the minimum coverage required by RSA 259:61, the insured's uninsured motorist coverage shall automatically be equal to the liability coverage elected. <u>For the purposes of this paragraph umbrella or excess policies that provide excess limits to [motor vehicle liability policies] shall also provide uninsured motorist coverage equal to the limits of liability purchased unless the named insured rejects such coverage in writing.</u>

RSA 264:15, I (emphasis added).

The policy in this case is a "personal excess liability policy" that provides coverage similar to an umbrella policy. We held in <u>Wilkinson</u> that a prior version of this statute did not apply to such policies. See <u>Wilkinson</u>, 132 N.H. at 448-49. At the time of the accident in <u>Wilkinson</u>, <u>see</u> <u>id</u>. at 441, the statute contained no reference to umbrella or excess policies. <u>See</u> RSA 264:15, I (1982) (amended 1988, 1991, 2007, 2018). Instead, by its terms, it applied only to motor vehicle policies. <u>See</u> <u>Wilkinson</u>, 132 N.H. at 447. We said in <u>Wilkinson</u> that the umbrella policy at issue "should not be characterized as a 'motor vehicle liability policy,'" within the meaning of RSA 264:15, because it did not insure any vehicle in particular; rather, "it insure[d the decedent] against rare catastrophic liability by providing excess coverage over and above that provided by" the decedent's motor vehicle liability policy. <u>Id</u>. at 446-47. We also noted that the umbrella policy did "not provide the minimum amounts of coverage required by statute" for motor vehicle liability policies. <u>Id</u>. at 447. For those reasons, we concluded that RSA 264:15 did not equate motor vehicle liability and umbrella policies, and because the statute applied only to the former, it did not impose requirements on umbrella or excess policies. <u>See</u> <u>id</u>. at 448. However, we invited the legislature, "[i]f [it] desire[d] uninsured motorist coverage to equal liability coverage from any source, including umbrella-type policies, . . . [to] amend the statute accordingly." <u>Id</u>. at 449.

Two years after <u>Wilkinson</u>, the legislature amended the statute. <u>See</u> Laws 1991, 330:2. In 1991, the legislature added a third sentence to the statute, which stated that "umbrella or excess policies that provide excess limits to [motor vehicle policies], shall also provide [UIM] coverage equal to the

7

limits of liability purchased, unless the named insured rejects such coverage." Id. This sentence was subsequently amended in 2007 to require the insured's rejection of UIM coverage to be "in writing." Laws 2007, 302:1.

We proceed to analyze whether the policy, as we have construed it, violates RSA 264:15.[2] Though we have not yet interpreted these amendments, we have previously interpreted the first two sentences of the statute and certain words used therein. See Gisonni v. State Farm Mut. Auto. Ins. Co., 141 N.H. 518, 519-21 (1996); Swain v. Employers Mut. Cas. Co., 150 N.H. 574, 576-78 (2004). The first sentence of the statute sets forth the basic requirement that when an insurer provides motor vehicle liability coverage, it must also provide UIM coverage in the same amounts and limits. Swain, 150 N.H. at 577. The uninsured motorist coverage provided must meet the minimum statutory requirements for motor vehicle liability coverage. Gisonni, 141 N.H. at 520; Rivera v. Liberty Mut. Fire Ins. Co., 163 N.H. 603, 610 (2012). The first sentence of the statute describes the insurer's obligation to provide such minimally sufficient UIM coverage by reference to both the "amounts" and "limits" of required coverage. Swain, 150 N.H. at 577. Unlike the first sentence, the second sentence of the statute (often referred to as the "elective coverage provision") includes only the word "amount," not the word "limits." Swain, 150 N.H. at 577.

In Gisonni, we determined whether, when an insured purchased motor vehicle liability coverage with a territorial scope broader than statutorily required, the insurer was required to issue UIM coverage with an identical territorial scope. See Gisonni, 141 N.H. at 519. The motor vehicle liability policy in that case "extended general liability coverage to losses occurring in the United States, Canada, and Mexico within fifty miles of the United States boundary, but limited [UIM] coverage to the United States and Canada only." Id. at 518-19. The plaintiff was injured in an automobile accident in Mexico, within fifty miles of the Mexico-United States border, and sought UIM benefits under the policy. Id. We emphasized that the elective coverage provision of the statute "applies when an insured purchases liability insurance in an amount greater than the minimum statutory requirement." Id. at 520 (quotation omitted); see RSA 264:15, I. "Thus the [elective coverage] provision is triggered by an insured's decision to purchase insurance with monetary limits in excess of the statutory minimum." Gisonni, 141 N.H. at 520. We highlighted that the elective coverage provision's language differed from the language of the first sentence of the statute, which spoke to the insurer's obligation to issue UIM coverage in both "amounts" and "limits" that comport with minimum statutory requirements. Id. Based on the omission of the word "limits" in the elective coverage provision, we held that the insured's decision to purchase a motor vehicle liability policy with a

---

[2] Metropolitan, in its brief, does not contest the statute's applicability to Santos's policy. At oral argument, Metropolitan agreed that Santos's policy provided "excess liability coverage for use of automobiles and the like."

8

greater territorial scope than mandated by statute did not require the insurer to issue UIM coverage with an identical territorial scope.  See id.

We re-affirmed this understanding of RSA 264:15, I, in Swain.  Swain, 150 N.H. at 577-78.  There, the motor vehicle policy provided liability coverage for both owned and non-owned vehicles, but the policy's UIM coverage extended only to owned vehicles.  Id. at 576.  The plaintiff argued that this discrepancy violated RSA 264:15, I.  See id.  We rejected this argument, and re-affirmed that "the elective coverage provision does not mandate complete mutuality between [motor vehicle] liability and [UIM] coverage."  Id. at 578.  The basis for this re-affirmation was, again, the difference in language between the first sentence of the statute and the elective coverage provision.  See id. at 577-78.  We explained that the first sentence requires the insurer to issue UIM coverage equal to the minimum statutory requirements for liability coverage in both "amounts" and "limits," but, when the insured purchases motor vehicle liability coverage over and above what is required by law, the elective coverage provision only requires the insurer to provide UIM coverage in a matching dollar "amount," not with matching "limits."  Id.

The foregoing demonstrates that the word "limits" as used in RSA 264:15, I, has a different meaning than the words "amount" or "amounts."  See Gisonni, 141 N.H. at 519-20; Swain, 150 N.H. at 577-78; see also Trombley, 148 N.H. at 752 ("The statute requires that a policy providing [motor vehicle] liability coverage to an insured also provide [UIM] coverage to that insured with the same monetary limits, although not necessarily with the same scope."); Wyatt v. Maryland Cas. Co., 144 N.H. 234, 239 (1999) ("The statute merely requires that where an insured chooses to purchase [motor vehicle] liability coverage greater than the statutory minimum, [UIM] coverage shall be equal to that amount.").  Liability and UIM coverage are equal in amount when they are equal in monetary coverage.  See Swain, 150 N.H. at 577.  Liability and UIM coverage are equal in limits when they are equal in scope, i.e., when they afford coverage in the same circumstances.[3]  See id. at 578.

Unlike the first two sentences of the statute, however, the third sentence of RSA 264:15, I, requires providers of "umbrella or excess policies that provide

---

[3] We note that the elective coverage provision was amended in 2015, after the accident in this case occurred.  See Laws 2015, 237:1.  The elective coverage provision now provides, "[w]hen an insured elects to purchase liability insurance in an amount greater than the minimum coverage required [for motor vehicle liability policies], the insured's uninsured motorist coverage shall automatically be equal in amounts and limits to the liability coverage elected."  RSA 264:15, I (2014) (Supp. 2017) (emphasis added).  Because the accident in this case occurred prior to this amendment, and because this case does not directly concern the elective coverage provision, we express no view on the effect of this amendment.  See Appeal of White Mountain Regional Sch. Dist., 154 N.H. 136, 139 (2006) ("An amendment to an existing law that affects contract rights is presumed to operate prospectively unless the language of the amendment or surrounding circumstances express a contrary legislative intent.").

excess limits" to motor vehicle policies to "provide [UIM] coverage equal to the limits of liability purchased." RSA 264:15, I (emphasis added). Based on the meaning we have ascribed to the word "limits" as used in the statute, this sentence means an insurer that issues an umbrella or excess policy that provides excess coverage to motor vehicle liability policies must provide excess UIM coverage with the same scope. See Swain, 141 N.H. at 578; see also Appeal of Int'l Bhd. of Police Officers, 148 N.H. 194, 195 (2002) ("Words used with plain meaning in one part of a statute are to be given the same meaning in other parts of the statute unless a contrary intention is clearly shown." (quotation omitted)). Excess UIM coverage must be available in the same circumstances that excess motor vehicle liability coverage is. See Swain, 141 N.H. at 578.

The precondition contained in the excess UIM endorsement attached to Santos's policy violates this sentence of the statute. Section III, paragraph 7 of the policy establishes that excess liability coverage is available to the insured even when he does not maintain sufficient underlying coverage. The precondition in the excess UIM endorsement, however, purports to allow the insurer to entirely deny coverage when the insured maintains insufficient underlying coverage. Thus, the precondition attempts to make excess UIM coverage unavailable in the same circumstances in which the policy provides excess motor vehicle liability coverage.

The parties to an insurance contract may not by agreement limit the required coverage in contravention of RSA chapter 264. Wegner v. Prudential Prop. & Cas. Ins. Co., 148 N.H. 107, 109 (2002). Hence, a provision which conflicts with the statute cannot be a valid part of the insurance contract and has no effect. Universal Underwriters Ins. Co. v. Allstate Ins. Co., 134 N.H. 315, 318 (1991). Because the portion of the excess UIM endorsement that makes Santos's maintenance of underlying UIM coverage a precondition creates a discrepancy in respective scopes of coverage, it has no effect. See id. Furthermore, the illegality of the precondition does not operate to invalidate the remaining provisions of the policy. See Peerless Ins. Co. v. Vigue, 115 N.H. 492, 495 (1975). That is especially true where, as here, the policy contains a condition which states, "Any provisions of this policy that conflict with the laws of the state in which you reside at the time this policy is issued are amended to conform with those laws." See 15 Grace McLane Giesel, Corbin on Contracts, § 89.4, at 629 (rev. ed. 2003). Accordingly, we hold that Metropolitan is liable to Santos for excess UIM benefits to the extent and in the amount that it would have been liable if Santos had underlying UIM coverage with policy limits of $100,000/$300,000.

Affirmed.

LYNN, C.J., and BASSETT and DONOVAN, JJ., concurred.